IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Network System Technologies, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>Texas Instruments Incorporated;<br>Ford Motor Company; Volkswagen<br>AG; Audi AG,<br><br>       Defendants. | Case No. 2:22-cv-00482-RWS |

# DEFENDANT FORD MOTOR COMPANY'S
# MOTION TO SEVER AND STAY UNDER THE CUSTOMER-SUIT DOCTRINE

## **TABLE OF CONTENTS**

I. INTRODUCTION ..............................................................................................................1

II. BACKGROUND ................................................................................................................2

III. LEGAL STANDARD.........................................................................................................3

IV. ARGUMENT......................................................................................................................5

    A. The Court Should Sever and Stay the Claims Against Ford Under the Customer-Suit Exception Factors ..........................................................................5

        1. Ford Is a Mere Downstream Reseller .........................................................5

        2. Ford Agree to Be Bound by the Outcome of NST's Claims against TI .....................................................................................................7

        3. TI Is the Sole Source of the Accused SoCs ................................................7

    B. The Traditional Stay Factors Favor Severing and Staying the Claims Against the Ford...................................................................................................8

        1. A Stay Will Not Unduly Prejudice NST.....................................................8

        2. A Stay Will Simplify the Issues in the Case...............................................9

        3. This Case Is in Its Earliest Stages.............................................................10

V. CONCLUSION.................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arigna Technology Limited v. Nissan Motor Company, Ltd., et al.*,
  Case No. 2:22-cv-00126-JRG-RSP, Dkt. 141 (E.D. Tex. Aug. 3, 2022) ................................. 2, 3

*Collaborative Agreements, LLC v. Adobe Sys. Inc.*,
  No. 1-14-CV-356-LY, 2015 WL 10818739 (W.D. Tex. Aug. 21, 2015) ..................................... 4

*CyWee Grp. Ltd. v. Huawei Device Co.*,
  No. 2:17-CV-495-WCB, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018) ................................. 5, 7

*Dali Wireless, Inc. v. Ericsson Inc.*,
  No. 6:22-CV-01313-ADA, 2023 WL 1423990 (W.D. Tex. Jan. 30, 2023) ............................. 6, 7

*Glenayre Elecs., Inc. v. Jackson*,
  443 F.3d 851 (Fed. Cir. 2006) ................................................................................................. 6, 8

*In re Google Inc.*,
  588 F. App'x 988 (Fed. Cir. 2014) ............................................................................................... 4

*Intel Corp. v. Commonwealth Sci. & Indus. Rsch. Organisation*,
  No. 6:06-cv-324, 2008 WL 5378037 (E.D. Tex. Dec. 23, 2008) ................................................ 9

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990) ................................................................................................... 6

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
  342 U.S. 180 (1952) .................................................................................................................... 6

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .................................................................................................................... 3

*Lighthouse Consulting Grp., LLC v. Truist Bank*,
  No. 2:19-CV-00340-JRG, 2020 WL 6781977 (E.D. Tex. April 6, 2020) ............................. 8, 10

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014) ................................................................................................... 4

*Saint Lawrence Commc'ns LLC v. Apple Inc.*,
  No. 2:16-cv-82-JRG, 2017 WL 3712912 (E.D. Tex. Jul. 12, 2017) ............................................ 4

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011) ........................................................................................ 4, 5, 6, 9

*Topia Tech., Inc. v. Dropbox, Inc.*,
  No. 6:21-CV-01373-ADA, 2022 WL 18109619 (W.D. Tex. Dec. 29, 2022) ............. 6, 7, 9, 10

*Vantage Point Tech., Inc. v. Amazon.com, Inc.*,
  No. 2:13-CV-909, 2015 WL 123593 (E.D. Tex. Jan. 6, 2015) ................................................. 5

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014) .............................................................................................. 9

*Westport Fuel Systems Canada, Inc. v. Ford Motor Company*,
  Case No. 2:21-cv-0453, 2023 WL 318466 (ED. Tex. Jan. 19, 2023) ............................... 2, 6, 9

**Other Authorities**

Fed. R. Civ. P. 21 ............................................................................................................... 1, 3

I.  **INTRODUCTION**

Defendant Ford Motor Company ("Ford") respectfully moves this Court under Fed. R. Civ. P. 21 to sever Plaintiff Network System Technologies, LLC's ("NST") claims against it, and to stay those claims pending resolution of NST's claims against the manufacturer of the accused functionality and the proper defendant in this case—Texas Instruments Incorporated ("TI").

NST seeks a single trial for two defendants: one component supplier who makes and supplies the accused product and one automobile manufacturer who is an indirect downstream customer of TI. TI, not Ford, is the true target of NST's allegations. NST's infringement allegations confirm this, as they are based exclusively on a component of TI's product. Ford merely buys and resells the accused product.

Specifically, NST alleges that Ford sells automobiles containing TI's system-on-a-chip (SoC) products, and those TI SoC's allegedly infringe NST's asserted patents. Dkt. 1 ¶ 17; *see also id.* at ¶¶ 97, 105, 114. Unlike TI, Ford is not alleged to manufacture or sell these SoCs individually; it is instead a downstream customer who does nothing more than sell vehicles incorporating the accused SoCs. NST itself openly confirms that, alleging "the TI SoCs are common to all Defendants' infringement of the Asserted Patents." *Id.* at ¶ 17. NST's claim charts accompanying its Complaint include no mapping of any claim element to any unique component developed by Ford. Only TI's SoCs are charted. Nor does NST allege that the TI SoCs were modified or adapted for use in Ford's vehicles. In short, TI is the source of the alleged infringing SoCs, and NST's claims against TI will resolve NST's infringement allegations against Ford.

Conducting a single trial on all issues for both defendants, as NST proposes, would unnecessarily increase the volume of witnesses, evidence, and counsel at trial, which would be inefficient and burdensome for the Court, the jury, and the parties. To conserve resources, the

Court has the power to sever and stay NST's claims against Ford under the customer-suit doctrine and its inherent power to promote efficiency and judicial economy. This Court and the Federal Circuit have repeatedly held that claims against manufacturers, like TI, should take precedence over claims against a downstream customer, like Ford. *See, e.g., Westport Fuel Systems Canada, Inc. v. Ford Motor Company*, Case No. 2:21-cv-0453, 2023 WL 318466, at *2 (ED. Tex. Jan. 19, 2023) (staying claims against Ford based on customer suit exception because Ford was a mere reseller of accused product and plaintiff's infringement contentions relied exclusively on underlying functionality of supplier's accused product and there was no allegation that Ford modified or customized that product); *Arigna Technology Limited v. Nissan Motor Company, Ltd., et al.*, Case No. 2:22-cv-00126-JRG-RSP, Dkt. 141 (E.D. Tex. Aug. 3, 2022) (severing claims against automobile manufacturers from claims against supplier because automobile manufacturers merely incorporate supplier's product into their vehicles without modification).

Should a stay be granted, Ford will agree to be bound by the Court's final judgments between TI and NST on the alleged validity and infringement of the asserted patents. Staying NST's claims against Ford allows the main substantive issues to be resolved most efficiently, thus simplifying matters for the Court, the jury, the witnesses, and the parties.

**II.   BACKGROUND**

NST asserts six patents against TI and Ford. Dkt. 1 ¶¶ 1, 95-123. NST alleges infringement by "the accused TI SoCs (as in the case of TI) or products containing the accused TI SoCs (as in the case of the remaining Defendants)." *Id.* at ¶ 17.

Ford is not alleged to design, manufacture, or alter the TI SoCs. *Id.* at ¶¶ 95, 105, 114. Instead, TI allegedly supplies the SoCs for incorporation into third-party infotainment system modules or their components, which are then ultimately supplied to Ford through third-party

2

intermediary component suppliers for installation in their vehicles, as illustrated below (showing the relationship between TI and Ford).



NST's infringement claim charts accompanying the complaint address the TI Jacinto family SoC (*e.g.*, OMAP 5 SoC, DRA79x SoC) as allegedly included in infotainment system modules installed in Ford's accused vehicles. *See* Dkt. 1, Exhibits 13-30. The infringement allegations against Ford are substantively identical to the allegations against TI, differing only by references to marketing literature suggesting the existence of a TI SoC in Ford's vehicles. *C.f.*, Dkt. 1, Exs. 13-30 (infringement charts for accused vehicles), *with* Exs. 7-12 (infringement charts for TI SoC). NST's specific claim element mapping is identical for TI and Ford. *Id*. NST itself acknowledges this sameness, asserting that a single action against all defendants is proper because "the TI SoCs are common to all Defendants' infringement of the Asserted Patents," and "each of the Defendants' accused products infringes the same Asserted Patents by using TI SoCs." Dkt. 1 ¶ 17.

### III.   LEGAL STANDARD

The Court "has the inherent power to control its own docket, including the power to stay proceedings." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Rule 21 of the Federal Rules of Civil Procedure allows the Court to "sever any claim against a party." Fed. R. Civ. P. 21.

3

Where a suit is brought against a manufacturer and its customers, the action against the customers should be stayed pending resolution of the case against the manufacturer to promote judicial economy. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365–66 (Fed. Cir. 2014). "[C]ourts apply the customer-suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011).

Courts have applied the customer-suit exception to cases in which the manufacturer and customer are named as defendants in the same case. *Nintendo*, 756 F.3d at 1365; *see also Saint Lawrence Commc'ns LLC v. Apple Inc.*, No. 2:16-cv-82-JRG, 2017 WL 3712912, at *1 (E.D. Tex. Jul. 12, 2017) ("courts have developed a practice of severing and staying claims against customers pending resolution of the suit against the manufacturer"); *Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 1-14-CV-356-LY, 2015 WL 10818739, at *3 (W.D. Tex. Aug. 21, 2015) (concluding "the same general principles govern" and the manufacturer is the "true defendant" when the manufacturer and customer defendants were brought in the same case).

To warrant a stay of the customer suit, the case involving the manufacturer "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum*, 657 F.3d at 1358 (citing *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). Courts are instructed to use a "flexible approach" to avoid wasteful expenditure of resources, and therefore "stay[] proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014); *see also Nintendo*, 756 F.3d at 1365–66 (determining that the customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination" (citations omitted)).

4

## IV. ARGUMENT

### A. The Court Should Sever and Stay the Claims Against Ford Under the Customer-Suit Exception Factors

In determining whether the customer-suit exception applies, courts consider three factors: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 WL 4002776, at *4 (E.D. Tex. Aug. 22, 2018) (quoting *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, No. 2:13-CV-909, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015)). The "guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357. Here, each factor weighs in favor of a stay.

#### 1. Ford Is Merely a Downstream Reseller

The first factor of the customer-suit analysis weighs heavily in favor of a severance and stay because Ford is merely a downstream reseller incorporating third-party infotainment system modules that contain the accused TI SoCs in vehicles.

As described above, in its infringement allegations, NST makes clear that its infringement theory centers on TI's SoCs, not Ford's. The accused products are TI SoCs. *See, e.g.*, Dkt. 1 ¶¶ 105, 114. Ford is only alleged to infringe to the extent that it is TI's downstream customer and sells vehicles incorporating the accused TI SoCs. NST does not allege that Ford designs, makes, or modifies the accused TI SoCs, but simply alleges that Ford vehicles "contain[]" the accused TI SoCs. *See, e.g., id.* at ¶¶ 17, 105, 114. Ford is a party to the lawsuit only because it is a downstream customer of TI. NST makes clear that "each of the Defendants' accused products infringes the same Asserted Patents by ***using*** TI SoCs." *Id.* at ¶ 17 (emphasis

added). Each element of the asserted claims allegedly corresponds to internal components of TI SoCs—not to anything that Ford makes, modifies, or develops. *See, e.g.*, Dkt. 1, Exs. 13-30. Accordingly, NST's claims against Ford involve the same "major issues" of liability and damages as its claims against TI. *Spread Spectrum*, 657 F.3d at 1358.

If NST obtains a judgment in its favor against TI, it will have exhausted its rights as a patent holder and will be precluded from collecting duplicative damages with respect to the same accused SoCs from downstream customers like Ford. *See, e.g., Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) (precluding plaintiff from seeking damages from customers because damages already collected from manufacturer). If TI prevails against NST, Ford will benefit from the result. *See, e.g., Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185-86 (1952). Even if ancillary issues were to remain after the outcome of NST's claims against TI, the resolution of NST's infringement claims will significantly simplify the issues involving Ford. *See Katz*, 909 F.2d at 1464.

Courts have repeatedly found that this factor favors a stay where the customer-defendant was similarly situated to Ford here. *See Westport*, 2023 WL 318466, at *2 (finding "Ford is a mere reseller because (1) the complaint alleges that Ford manufactures accused vehicles that 'utilize' the allegedly infringing fuel injector, … and (2); the underlying functionalities of the accused product as alleged in the infringement contentions are independent of Ford's particular use"); *see also Dali Wireless, Inc. v. Ericsson Inc.*, No. 6:22-CV-01313-ADA, 2023 WL 1423990, at *3 (W.D. Tex. Jan. 30, 2023) (finding that first factor supports severance and stay because "[Plaintiff] does not allege that any of the claim limitations are met by an act or component from [the customer-defendant]" and that "[Plaintiff's] infringement case against [the manufacturer] is identical to [its] infringement case against [the customer]"); *Topia Tech., Inc. v.*

6

*Dropbox, Inc.*, No. 6:21-CV-01373-ADA, 2022 WL 18109619, at *4 (W.D. Tex. Dec. 29, 2022) (finding that plaintiff accusing customer-defendants of using or promoting the manufacturer's accused products supports a severance and stay). Thus, the first factor of the customer-suit exception analysis favors a stay.

### 2. Ford Agrees to Be Bound by the Outcome of NST's Claims against TI

Ford agrees to be bound by any judgment by the Court on NST's claims against TI. This factor, thus, favors severing and staying the claims against Ford. *See CyWee Grp.*, 2018 WL 4002776, at *4 (holding that agreement to be bound by an infringement determination in the manufacturer case supports a stay).

### 3. TI Is the Sole Source of the Accused SoCs

As articulated above, NST's infringement claims are directed squarely against TI's SoCs. NST alleges Ford infringes only through its use of TI's SoCs in accused vehicles. Dkt. 1 ¶ 17. Ford is not alleged to design, make, or sell SoCs in a manner that infringes the asserted patents, and every claim element is met solely by the TI SoCs in the infringement allegations. This factor, thus, favors a severance and stay. *See Topia Tech.*, 2022 WL 18109619, at *4 (finding that this factor supports a severance and stay because plaintiff has not argued that another manufacturer is the source of the infringing product and plaintiff's infringement allegations center on how manufacturer's products meet claim limitations).

In view of each of the above factors, the great weight of the case law supports a severance and stay of NST's claims against Ford. This is shown through ample case law, including the following:

| Key Facts | *Westport Fuel Sys.* | *Dali Wireless* | *Topia Tech.* | This Case |
|---|---|---|---|---|

| Claims against manufacturer defendant were currently pending | ✓ | ✓ | ✓ | ✓ |
|---|---|---|---|---|
| Infringement allegations centered on manufacturer's products | ✓ | ✓ | ✓ | ✓ |
| Manufacturer is only source of accused product | ✓ | ✓ | ✓ | ✓ |
| Customer defendant agrees to be bound by judgment involving manufacturer | ✓ | ✓ | ✓ | ✓ |

### B. The Traditional Stay Factors Favor Severing and Staying the Claims Against Ford

The traditional stay factors also demonstrate that a severance and stay are in the interest of efficiency, judicial economy, and the just, speedy, and inexpensive resolution of this action. In deciding whether to stay a patent case, courts typically consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Lighthouse Consulting Grp., LLC v. Truist Bank*, No. 2:19-CV-00340-JRG, 2020 WL 6781977, *2 (E.D. Tex. April 6, 2020) (citation omitted). Here, all three factors favor a stay.

#### 1. A Stay Will Not Unduly Prejudice NST

A stay will cause no prejudice to NST. If the case is stayed as to Ford, NST is free to maintain its litigation against TI. Any recovery NST obtains against TI will exhaust the damages it could claim against Ford—*i.e.*, the downstream customers of TI. *Glenayre Elecs.*, 443 F.3d at 864. Accordingly, if NST prevails against TI, it will recover fully, finally, and with zero delay. A stay for Ford will not change this.

In addition, as stated above, Ford agrees to be bound by any final judgment on NST's claims against TI in this case. TI develops and manufactures the accused SoCs and controls all relevant technical information. Ford has little or no knowledge of these details. Further, NST will not be disadvantaged by a stay since any potential relief it may receive against Ford—and none is possible, because of patent exhaustion—will be available after the stay. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014); *see also Topia Tech.*, 2022 WL 18109619, at *5 (finding that this factor favors a stay because a stay "does not significantly delay [Plaintiff] from litigating the question of infringement" and "the bulk of the relevant evidence comes from the supplier of the accused product, not the customer."). Accordingly, this factor favors a stay of NST's claims against Ford.

### 2. A Stay Will Simplify the Issues in the Case

The requested stay will allow the Court to focus on TI, the party that sold the accused SoCs. Severing TI from Ford and trying NST's claims against TI first would adjudicate issues common to all defendants more efficiently by involving fewer parties, fact witnesses, experts, evidence, and counsel, thus saving significant litigation expenses for the judicial system and the parties. A single trial would also confuse the jury. *Intel Corp. v. Commonwealth Sci. & Indus. Rsch. Organisation*, No. 6:06-cv-324, 2008 WL 5378037, at *5 (E.D. Tex. Dec. 23, 2008) (bifurcating trials for liability and damages issues because "proceeding to trial on liability and damages simultaneously" in cases involving both chip makers and box makers would "undoubtedly confuse the issues and the jury").

As explained above, the outcome of NST's claims against TI will "resolve the 'major issues' concerning the claims against the customer." *Spread Spectrum*, 657 F.3d at 1358. The burden on the Court's limited resources would be reduced by eliminating unnecessary hearings and a liability trial for Ford. *See Westport*, 2023 WL 318466, at *4 ("even if further proceedings

are required in this action, there is still simplification of the issues"); *Topia Tech.*, 2022 WL 18109619, at *5 (holding that "the issues will be greatly simplified by first resolving the claims against [manufacturer]"). Accordingly, this factor favors a stay of NST's claims against Ford.

### 3. This Case Is in Its Earliest Stages

This case is in its earliest stages. NST has not yet served its infringement contentions under P. R. 3-1. The Court has not entered a Scheduling Order and discovery is not yet open. Hence, this final factor also weighs in favor of a stay. *See Lighthouse Consulting Grp.*, 2020 WL 6781977, at *2 (finding a stay is appropriate under the general stay factors where "discovery has not been completed" and "the trial date, although set, is approximately one year away.").

## V.    CONCLUSION

For the foregoing reasons, Ford respectfully requests that the Court sever NST's claims against it, and stay those claims pending final resolution of NST's claims against TI, the source of the allegedly infringing products.

Date: April 17, 2023

*/s/ Jennifer P. Ainsworth with permission of Justin E. Pierce*
Justin E. Pierce
JEPierce@venable.com
Charles J. Monterio, Jr.
CJMonterio@venable.com
Venable LLP
600 Massachusetts Avenue, NW
Washington, D.C. 20001
Telephone: (202) 344-4569
Facsimile: (202) 344-8300

J. Daniel Kang
JDKang@venable.com
Venable LLP
151 West 42nd Street, 49th FL
New York, NY 10036
Telephone: (212) 307-5500
Facsimile: (212) 307-5598

Jennifer P. Ainsworth<br>
TX State Bar No. 00784720<br>
jainsworth@wilsonlawfirm.com<br>
Wilson, Robertson & Cornelius, P.C.<br>
909 ESE Loop 323, Suite 400<br>
Tyler, Texas 75701<br>
Telephone: (903) 509-5000<br>
Facsimile: (903) 509-5092<br>

*Attorneys for Defendant Ford Motor Company*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Ford has conferred with counsel for Plaintiff, who opposes this Motion.

*/s/ Jennifer P. Ainsworth*
Jennifer P. Ainswortih

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this April 17, 2023.

*/s/ Jennifer P. Ainsworth*
Jennifer P. Ainswortih

11