# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC, § § § § Plaintiff, § § v. § § TEXAS INSTRUMENTS § INCORPORATED; FORD MOTOR § COMPANY § Defendants. § | Civil Action No. 2:22-cv-00482-RWS **JURY TRIAL DEMANDED** |

**PLAINTIFF NETWORK SYSTEM TECHNOLOGIES, LLC'S OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION TO SEVER AND STAY UNDER THE CUSTOMER-SUIT DOCTRINE**

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................3

III. APPLICABLE LAW ......................................................................................................3

IV. ARGUMENT ..................................................................................................................4

    A. The Guiding Principles of Efficiency and Judicial Economy in the Customer-Suit Doctrine Are Not Met by a Severance and Stay ..............................4

        1. The Infringement Allegations Against Ford are Not Identical to Those Against TI ..........................................................................................5

            a. NST Has Alleged Direct Infringement of Method Claims by Ford ..............................................................................................5

            b. Different Patent Claims of the '2893 Patent Are Asserted Against TI and Ford ........................................................................7

            c. The Complaint Alleges Indirect and Willful Infringement Claims Against Ford ................................................................................8

        2. Ford's Motion is Premature as Discovery is Needed to Determine Ford's Role in the Design, Manufacture, and Importation of the Ford and TI Accused Products ..................................................................9

V. CONCLUSION .............................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                              **Page**

*Anderson v. Red River Waterway Comm'n*,
   231 F.3d 211 (5th Cir. 2000) ...............................................................................................3

*Arigna Technology Ltd. v. Nissan Motor Co.*,
   No. 2:22-cv-00126-JRG-RSP, Dkt. 141 (E.D. Tex. Aug. 3, 2022) ..........................................6

*Corydoras Techs., LLC v. Best Buy Co.*,
   No. 2:19-cv-00304-JRG-RSP, 2020 U.S. Dist. LEXIS 45578
   (E.D. Tex. March 16, 2020)...........................................................................................5, 6, 8

*Dali Wireless, Inc. v. Ericsson Inc.*,
   No. 6:22-CV-01313-ADA, 2023 U.S. Dist. LEXIS 15774 (W.D. Tex. Jan. 30, 2023) ............9

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
   No. 2:15-CV-1202-WCB, 2016 U.S. Dist. LEXIS 55205 (E.D. Tex. April 26, 2016) .............5

*Glenayre Elecs., Inc. v. Jackson*,
   443 F.3d 851 (Fed. Cir. 2006)................................................................................................6

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990)..............................................................................................4

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)...............................................................................................................4

*Parallel Networks Licensing, LLC v. Superior Turnkey Sols. Grp., Inc.*,
   No. 4:19-cv-516, 2020 U.S. Dist. LEXIS 76750 (E.D. Tex. May 1, 2020) .............................7

*Sas Inst., Inc. v. World Programming Ltd.*,
   No. 2:18-CV-00295-JRG, 2019 U.S. Dist. LEXIS 229850
   (E.D. Tex. April 4, 2019).......................................................................................4, 5, 6, 7, 10

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
   657 F.3d 1349 (Fed. Cir. 2011)..............................................................................................4

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*,
   458 F.3d 1335 (Fed. Cir. 2006)..............................................................................................4

*VirtualAgility Inc. v. Salesforce.com*,
   759 F.3d 1307 (Fed. Cir. 2014)..............................................................................................4

*Wapp Tech L.P. v. Bank of Am. Corp.*,
  No. 4:18-CV-00519, 2019 U.S. Dist. LEXIS 139467 (E.D. Tex. August 19, 2019) ................9

*Westport Fuel Sys. Can., Inc. v. Ford Motor Co.*,
  No. 2:21-cv-0453-RWS-RSP, 2023 U.S. Dist. LEXIS 9473 (E.D. Tex. Jan. 19, 2023) ...........6

*Young Eng'rs, Inc. v. United States ITC*,
  721 F.2d 1305 (Fed. Cir. 1983)......................................................................................7

**Statutes**

35 U.S.C. § 271(b) ...............................................................................................................8

35 U.S.C. § 271(c) ...............................................................................................................8

Plaintiff Network System Technologies, LLC ("NST") respectfully submits its Opposition to Defendant Ford Motor Company's ("Ford") Motion to Sever and Stay Under the Customer-Suit Doctrine ("Motion"). (Dkt. 38.)

I.   **INTRODUCTION**

Ford seeks to sever and stay NST's claims against it pending resolution of NST's claims against another defendant in this case, Texas Instruments, Inc. ("TI"). Ford argues that splitting a single trial into two asynchronous trials involving the same six patents will conserve judicial resources and be more efficient. In support of this, Ford repeatedly asserts that it is merely a reseller of TI's system-on-a-chip products (the "TI Accused Products"), and, in doing so, ignores the full scope of NST's allegations against Ford which make clear that Ford's infringing products and conduct are not identical to TI's. Specifically, NST alleges that Ford "willfully, deliberately, and intentionally" infringes each of the six asserted patents, both directly and indirectly, via both its conduct and its making, selling, and importing of infringing "Ford vehicles and components thereof . . . " and infringing "Lincoln vehicles and components thereof . . . ." (the "Ford Accused Products") (Dkt. 1 ¶¶ 105, 138, 163, 188, 213, 238, 263.) NST has submitted lengthy and detailed claim charts for each of the six patents at issue that are customized to each defendant and their respective accused products. (Dkt. 1, Exs. 7–12 (TI claim charts); Dkt. 1, Exs. 13–18 (Ford claim charts); *see also* Dkt. 41 (NST's Notice of Local Patent Rule 3-1 and 3-2 Disclosures).)[1]

Ford focuses its severance and stay arguments on various factors that are not relevant to the facts and circumstances of the case and, simply put, draw focus away from the guiding principle

---

[1] On April 25, 2023, NST served its Local Patent Rule 3-1 and 3-2 Disclosures pursuant to this Court's Scheduling Order (Dkt. 35). (Dkt. 41). In those Disclosures, NST asserts 24 claims across the six asserted patents against each of TI and Ford. Attached to those Disclosures are over 1,000 pages of claim charts that provide even greater detail of Defendants' infringement beyond the exhibits attached to its Complaint.

of the customer-suit doctrine—efficiency. For example, Ford's arguments rely heavily on its agreement "to be bound by the Court's final judgments between TI and NST on the alleged validity and infringement of the asserted patents." (Dkt. 38, at 2.) However, Ford's agreement to be bound by judgments between TI and NST only conserves judicial resources if the infringement allegations against Ford are identical to those against TI; they are not. The majority, if not all, infringement allegations against TI and Ford differ. Therefore, judgments between TI and NST will fail to resolve the majority of the claims against Ford. Further, Ford must remain in the case in order to fully resolve all claims against TI. For example, indirect infringement claims against TI may rely on a determination that Ford is a direct infringer.

Specifically, the following facts and circumstances, among others, require Ford to remain in the present suit.

First, NST has alleged direct infringement of method claims by Ford. Method claims are treated differently under the customer-suit doctrine than apparatus claims because Ford (or others at Ford's direction or control) must be shown to complete each and every step of a method to prove direct infringement. Additionally, adjudication of the direct infringement allegations against Ford may be a prerequisite for an adjudication of indirect infringement allegations against TI.

Second, different patent claims of the '2893 patent are asserted against TI and Ford. Therefore, not a single claim between Ford and NST would be resolved by an adjudication between TI and NST with regard to infringement of the '2893 patent.

Third, the complaint alleges indirect and willful infringement by Ford. Final judgments between TI and NST would not resolve any issues regarding the required knowledge, intent, or conduct by Ford for indirect and willful infringement.

Thus, the facts and circumstances of this case clearly indicate that a severance and stay of

Ford's claims should be denied in order to promote judicial economy and efficiency.

## II.    FACTUAL BACKGROUND

NST filed its Complaint against Ford and TI alleging patent infringement of U.S. Patent Nos. 7,366,818 ("the '818 Patent"); 7,373,449 ("the '449 Patent"); 7,594,052 ("the '052 Patent"); 7,769,893 ("the '9893 Patent"); 8,072,893 ("the '2893 Patent); and 8,086,800 ("the '800 Patent") (collectively, the "Asserted Patents"). (Dkt. 1 ¶ 1.) NST alleges direct, indirect, and willful infringement of each of the Asserted Patents by TI and Ford.[2] (Dkt. 1 ¶¶ 1, 3–6.)

NST attached detailed claim charts to its Complaint that map the Ford Accused Products and Ford's conduct against an exemplary claim of each of the six Asserted Patents on an element-by-element basis. (Dkt. 1, Exs. 13–18.)[3] In those charts, NST cites to technical and marketing materials to show how the Ford Accused Products and Ford's conduct directly infringe four method claims and two apparatus claims of the Asserted Patents. (*See id.*) In the Complaint, NST additionally asserts that Ford indirectly and willfully infringes each of the Asserted Patents based on Ford's knowledge, intent, and conduct. (Dkt. 1 ¶¶ 110–113.) Notably, different patent claims of the '2893 patent are asserted against TI and Ford. NST asserts claim 1, an apparatus claim, against Ford, and claim 10, a method claim, against TI. (*Id.* ¶ 225, 228.)

## III.   APPLICABLE LAW

The district court has broad discretion when deciding whether to sever. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). Management of the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even

---

[2] Volkswagen AG and Audi AG were dismissed from the case without prejudice. (Dkt. 33.)  Therefore, only TI and Ford remain as Defendants in this case.

[3] *See supra* note 1.

3

balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Under the customer-suit doctrine, in certain circumstances, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (internal citations omitted). "[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (citing *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006). A "primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz*, 909 F.2d at 1463.

### IV.  ARGUMENT

The most important consideration in determining whether NST's claims against Ford should be severed and stayed pending resolution of NST's claims against TI is judicial economy; namely, efficiently and conservatively using the Court's resources. Ford argues that conducting two trials at different times is more efficient than conducting a single trial. To support their argument, Ford discusses a number of factors with limited relevance to the efficient resolution of the present case in an attempt to divert focus from judicial economy, and instead focus on Ford's own convenience.

### A. The Guiding Principles of Efficiency and Judicial Economy in the Customer-Suit Doctrine Are Not Met by a Severance and Stay

A stay is not warranted if the claims against Ford "may not be disposed of by adjudication of the [manufacturer's c]laims." *Sas Inst., Inc. v. World Programming Ltd.*, No. 2:18-CV-00295-JRG, 2019 U.S. Dist. LEXIS 229850, at *9 (E.D. Tex. April 4, 2019). *See also VirtualAgility Inc. v. Salesforce.com*, 759 F.3d 1307, 1314 (Fed. Cir. 2014) (noting motions to stay were denied in cases where *inter partes* review or reexamination proceedings would fail to dispose of all claims).

4

As explained below, the majority of claims against Ford are not identical to the claims against TI, so adjudication of NST's claims against TI cannot resolve the majority of NST's claims against Ford. Therefore, Ford's Motion should be denied.

> **1. The Infringement Allegations Against Ford are Not Identical to Those Against TI**
> **a. NST Has Alleged Direct Infringement of Method Claims by Ford**

Courts in this District have denied motions to sever and stay claims in cases that involve direct infringement of method claims because those suits do "not fall within the customer-suit exception as it is conventionally applied to manufacturers and retailers who are both alleged to be direct infringers of an apparatus patent." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 U.S. Dist. LEXIS 55205, at *12–13 (E.D. Tex. April 26, 2016). *See also Corydoras Techs., LLC v. Best Buy Co.*, No. 2:19-cv-00304-JRG-RSP, 2020 U.S. Dist. LEXIS 45578, at *14–16 (E.D. Tex. March 16, 2020) ("the customer-suit exception is inapplicable under the facts of this case [and] a stay is inappropriate" because, *inter alia*, "a ruling in the declaratory judgment action with respect to [the manufacturer] will not conclusively resolve any counts of infringement against [the customer] for method claims"); *Sas Inst., Inc.*, 2019 U.S. Dist. LEXIS 229850, at *8 (internal citations omitted) ("Even in the patent context, the customer-suit exception does not apply when the claims against the manufacturer and non-manufacturer defendants are not identical, such as when—as here—the manufacturer and non-manufacturer defendants are respectively accused of indirect and direct infringement of a method patent.").

The Complaint alleges direct infringement of method claims by Ford from four of the six Asserted Patents. (Dkt. 1 ¶ 35, 47, 59, 83, 158, 183, 208, 258.) Adjudication of these method claims against Ford requires proof that *Ford* performs each and every step of each asserted method claim. Severing Ford to adjudicate claims only against TI would therefore not be the most efficient way

to resolve whether *Ford* (or others at *Ford's* direction or control) performed each and every step of each of the four asserted method claims. For example, if Ford is severed and TI is found to not directly infringe the method claims, this resolution against TI does not conclusively resolve any counts of infringement against Ford. This is because direct infringement by Ford does not require TI to perform each step of the method, it only requires Ford to perform each step of the method.

Multiple cases cited by Ford in its Motion are distinguishable based on the disparate treatment of apparatus and method claims under the customer-suit doctrine. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 853 (Fed. Cir. 2006) ("The [asserted] patent discloses and claims an **apparatus** . . . ") (emphasis added); *see generally Westport Fuel Sys. Can., Inc. v. Ford Motor Co.*, No. 2:21-cv-0453-RWS-RSP, 2023 U.S. Dist. LEXIS 9473 (E.D. Tex. Jan. 19, 2023) (discussing infringement of **apparatus** claims); *Arigna Technology Ltd. v. Nissan Motor Co.*, No. 2:22-cv-00126-JRG-RSP, Dkt. 141 (E.D. Tex. Aug. 3, 2022) (asserting infringement of **apparatus** claims only).

Moreover, proving Ford's direct infringement of the Asserted Patents may be a prerequisite for proving TI's indirect infringement of the Asserted Patents. "[A]n indirect infringement claim against an alleged manufacturer may be predicated upon acts of direct infringement by [a customer]. . . . Further, even if a jury found no indirect infringement by [the manufacturer], [the customer] may still directly infringe." *Corydoras Techs., LLC*, 2020 U.S. Dist. LEXIS 45578, at *12. *See also Sas Inst., Inc.*, 2019 U.S. Dist. LEXIS 229850, at *10 ("[Plaintiff] cannot prove indirect infringement by [manufacturer] without also proving that *someone* directly infringed the patents at issue.").

The Complaint alleges TI "actively and knowingly induces others," such as Ford, to infringe the Asserted Patents. (Dkt. 1 ¶ 101.) TI's inducement of infringement cannot be proven

6

without also proving that another entity directly infringes the Asserted Patents. As direct infringement by Ford has already been asserted, detailed, and charted, the most efficient resolution of the induced infringement claims against TI requires Ford to remain in the suit.

### b. Different Patent Claims of the '2893 Patent Are Asserted Against TI and Ford

Ford's Motion should also be denied on the basis of different claims of the '2893 patent being asserted against Ford and TI. Claim 1 of the '2893 patent is an apparatus claim asserted against Ford and claim 10 is a method claim asserted against TI. (Dkt. 1 ¶ 71, 225, 233.) Adjudication of the claims against only TI would therefore not resolve any claims relating to infringement of the '2893 patent by Ford because each defendant has "not been charged with identical acts of patent infringement." *Parallel Networks Licensing, LLC v. Superior Turnkey Sols. Grp., Inc.*, No. 4:19-cv-516, 2020 U.S. Dist. LEXIS 76750, at *8 (E.D. Tex. May 1, 2020). *See also Sas Inst., Inc.*, 2019 U.S. Dist. LEXIS 229850, at *8 ("the customer-suit exception does not apply when the claims against the manufacturer and non-manufacturer defendants are not identical").

Because different claims (apparatus vs. method) were asserted against Ford and TI, each of which requires different conduct for infringement thereof, it is immaterial that "Ford agrees to be bound by any judgment by the Court on NST's claims against TI." (Dkt. 38, at 7.) Even if Ford was bound by any judgment against TI, this binding effect would not resolve any claims that are unique to Ford, such as Ford's infringement of claim 1 of the '2893 patent. In fact, the Federal Circuit has found "no authority that claim preclusion would apply to conduct of a different nature from that involved in the prior litigation." *Young Eng'rs, Inc. v. United States ITC*, 721 F.2d 1305, 1316 (Fed. Cir. 1983).

Ford has asserted that their agreement to be bound by any judgment against TI is a factor

7

that "favors severing and staying the claims against Ford." (Dkt. 38, at 7.) However, because Ford's agreement does not make the resolution of the '2893 patent infringement claims more efficient, and such resolution would require two separate trials if Ford's motion is granted, this weighs heavily against severance and stay.

### c. The Complaint Alleges Indirect and Willful Infringement Claims Against Ford

"[C]ritical indirect infringement issues will remain regardless of how the [manufacturer] case is resolved. Thus, even if a stay were granted and several issues were resolved, a large number of issues would still remain open and unresolved in this case. The Court concludes this factor weighs strongly against a stay." *Corydoras Techs., LLC*, 2020 U.S. Dist. LEXIS 45578, at *14–15. *See also id.* at *13 ("[The manufacturer's] declaratory judgment action will not resolve issues as to whether [the customer] knowingly induced infringement or whether [the customer] possessed the specific intent to encourage another's infringement, so a finding of indirect infringement by [the manufacturer] would not conclusively resolve any claims of indirect infringement against [the customer]. Thus, critical infringement issues would still remain unresolved with respect to [the accused] products if this case were stayed.").

The Complaint has not only alleged direct infringement by Ford, but also indirect and willful infringement by Ford. (Dkt. 1 ¶¶ 101–104, 110–113.) The various indirect and willful infringement allegations against Ford require, in addition to proof of direct infringement, proof of: Ford's knowledge that their actions would induce infringement, Ford's knowledge of the Asserted Patents, Ford's knowledge of its own infringement, Ford's specific intent to induce infringement, Ford's knowledge that the Ford Accused Products were especially made/adapted for use in a manner that would infringe the Asserted Patents, and Ford's intentional conduct. *See* 35 U.S.C. § 271(b)–(c) (explaining proof required for inducement and contributory infringement).

8

Of note, Ford made no mention of the indirect and willful infringement allegations against it in its Motion. (*See generally* Dkt. 38.) Ford's silence is tacit acknowledgement that adjudicating claims against TI cannot, and would not, resolve any claim of indirect and/or willful infringement alleged against Ford. Simply put, a suit against only TI would not resolve any questions relating to Ford's knowledge or intent for indirect and willful infringement. Moreover, Ford repeatedly cites to *Dali Wireless*—a case devoid of any discussion of indirect or willful infringement—asserting that *Dali Wireless* has a similar fact pattern to the present case and therefore a severance and stay should likewise be granted. (Dkt. 38, at 6–8.) *See generally Dali Wireless, Inc. v. Ericsson Inc.*, No. 6:22-CV-01313-ADA, 2023 U.S. Dist. LEXIS 15774 (W.D. Tex. Jan. 30, 2023). However, the lack of indirect and willful infringement claims makes *Dali Wireless* completely irrelevant to, and distinguishable from, the present case. Therefore, Ford's Motion should be denied on the basis of the indirect and willful infringement allegations against Ford.

### 2. Ford's Motion is Premature as Discovery is Needed to Determine Ford's Role in the Design, Manufacture, and Importation of the Ford and TI Accused Products

As noted above, Ford's Motion should be denied on its merits now due to the unique claims against Ford that would go unresolved if the case against it was severed. Momentarily setting that aside, Ford's Motion may alternatively be denied as premature because discovery is needed to ascertain the full scope of both Ford and TI's infringement. The full extent to which Ford contributed to the design and manufacture of the TI Accused Products, and the full extent to which TI contributed to the design and manufacture of the Ford Accused Products, remains unclear. For example, in a video posted on TI's website, executives from Ford (Doron Elliott, Ford's Supervisor & Technical Expert for In-Vehicle Infotainment Connectivity) and TI (Bob Bloomquist, TI's OEM Sales Manager) discuss how Ford's customer feedback confirmed achievement of the companies'

9

mutual goals surrounding incorporation of the Accused TI Products into the Accused Ford Products. *See TI Enables the Evolution of Ford SYNC® 3*, TEXAS INSTRUMENTS (Jan. 16, 2017), https://www.ti.com/video/5273617235001. In the video, Mr. Bloomquist from TI remarked that the Ford Accused Products have "been received very well . . . everything **we were looking for** as far as, you know, a system that was easy to use, was very responsive, and it gave a customer a very familiar setting, I think **we achieved that** . . . it was very exciting **to be a part of that and work with you guys in the development**." *Id.* at 0:29–45 (emphases added). Mr. Elliott responded that Ford "really attribute[s] a lot of" the positive customer feedback that Ford has received "to **the partnership that we've had together with Texas Instruments** in our ability to deliver an awesome system here in **our SYNC 3 platform**," which is incorporated into the Accused Ford Products. *Id.* at 0:58–1:06 (emphases added).

Discovery is therefore needed to determine the nature of Ford and TI's respective roles in the mutual development of the Ford Accused Products and TI Accused Products. *See Wapp Tech L.P. v. Bank of Am. Corp.*, No. 4:18-CV-00519, 2019 U.S. Dist. LEXIS 139467, at *8 (E.D. Tex. August 19, 2019) ("the Court believes that Defendant's motion to stay pursuant to the customer-suit exception is premature as additional discovery should be conducted by the parties to determine whether Defendant is a customer or manufacturer of an accused system.").

Discovery is also needed to determine the extent to which Ford imports TI Accused Products into the United States. If the TI Accused Products that are incorporated into the Ford Accused Products are imported by Ford rather than TI, then NST may not be able to obtain full recovery unless Ford remains in the suit. *Sas Inst., Inc.*, 2019 U.S. Dist. LEXIS 229850, at *12–13 (denying motion to sever and stay under the customer-suit doctrine due, in part, to unlikelihood of plaintiff to fully recover against manufacturer defendant). Thus, a severance and stay of claims

between Ford and NST would not promote judicial economy and efficiency and would be highly prejudicial to NST.

## V. CONCLUSION

Accordingly, NST respectfully requests that this Court deny Ford's Motion in its entirety.

Date: April 28, 2023

Respectfully submitted,

*/s/ William E. Davis, III*
William E. Davis, III
DAVIS FIRM PC
213 N. Fredonia Street, Suite 230
Longview, TX 75601
(903) 235-2588
bdavis@davisfirm.com

Daniel S. Stringfield
NIXON PEABODY LLP
70 West Madison St., Suite 5200
Chicago, IL 60602
(312) 977-4130
dstringfield@nixonpeabody.com

Erica J. Van Loon
Vincent Capati
NIXON PEABODY LLP
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071
(213) 629-6000
evanloon@nixonpeabody.com
vcapati@nixonpeabody.com

*Attorneys for Plaintiff Network System Technologies, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served on April 28, 2023 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ *William E. Davis, III*