IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC,<br>　　　　Plaintiff,<br><br>v.<br><br>TEXAS INSTRUMENTS INCORPORATED; FORD MOTOR COMPANY<br>　　　　Defendants. | CIVIL ACTION NO. 2:22-CV-000482-RWS |

# ORDER

Before the Court is Defendant Ford Motor Company's Motion to Sever and Stay Under the Customer-Suit Doctrine. Docket No. 38. Plaintiff Network System Technologies, LLC opposes this motion. Docket No. 51. Defendant Texas Instruments Incorporated ("TI") states it does not oppose Ford's motion to sever and agrees with Ford's position that, based on the allegations in the complaint, TI is the "true defendant." Docket No. 70 at 45:15–46:11. This motion is fully briefed. Docket Nos. 38, 51, 57.

The Court held a hearing on this motion on June 27, 2023. Docket Nos. 60, 68, 70. In its briefing, and at the hearing, Ford represented it was willing to submit declarations and/or stipulations in support of its motion to sever. *See e.g.*, Docket No. 70 at 42:5–21. Accordingly, the Court ordered Ford to exchange its proposed declarations and stipulations and for the parties to provide a joint status report indicating whether the parties' positions changed upon this exchange. Docket No. 71. On July 28, 2023, the parties submitted the joint status report detailing the parties' positions after reviewing Ford's stipulations and declarations. Docket No. 78.

On September 22, 2023, Ford moved for a protective order to prevent Plaintiff from seeking broad discovery allegedly related to "*any* NoC IC incorporated into *any* Ford vehicle," not

just the accused products. Docket No. 93. Ford argues this broad discovery is "far broader than the claims and defenses in this case or proportional to the needs of this case" and is sought as retaliation to Ford's motion to stay and sever. *Id*. at 8. At the time of the present order, Plaintiff has not yet responded to Ford's motion.

For the reasons discussed below, the Court hereby **GRANTS** Defendant Ford's Motion to Stay and Sever (Docket No. 38). Ford's Motion for a Protective Order (Docket No. 93) is accordingly **DENIED WITHOUT PREJUDICE** as it is premature.

## Legal Standard

The trial court has broad discretion to sever and stay actions. *See Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000); *see also Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994) (citing FED. R. CIV. P. 21). When a patent infringement suit is brought against a manufacturer and its customers, the action against the customers may be stayed pending resolution of the case against the manufacturer to avoid "imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365–66 (Fed. Cir. 2014) (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737–38 (1st Cir. 1977)); *In re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015) (finding such a stay is not mandatory). The "customer-suit exception" to the first-filed rule provides that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This exception may apply in cases in which the supplier and customer are codefendants. *See Nintendo*, 756 F.3d at 1365.

To warrant a stay of the customer suit, the case involving the manufacturer "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every

issue." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (citing *Katz*, 909 F.2d at 1464). Courts are instructed to avoid wasted resources through a "flexible approach, including staying proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014); *see also Nintendo*, 756 F.3d at 1365–66 (determining that the customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination" (citations omitted)).

## Analysis

Plaintiff alleges TI makes the accused systems on a chip ("SoCs"), which are purchased and installed into downstream products by various consumers, including Ford. *See e.g.*, Docket No. 1, ¶¶ 17–18, 95. Plaintiff asserts that Defendants infringe six patents: U.S. Patent Nos. 7,366,818 ("'818 patent"), 7,373,449 ("'449 patent"), 7,594,052 ("'052 patent"), 7,769,893 ("'9893 patent"), 8,072,893 ("'2893 patent"), and 8,086,800 ("'800 patent"). *Id.* at ¶ 1. While most claims asserted against TI and Ford are the same, Plaintiff asserts different patent claims of the '2893 patent against TI and Ford. Docket No. 51 at 7; Docket No. 57 at 3.

### I.  Customer-Suit Exception

In determining whether the customer suit exception applies, the court considers factors such as: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 WL 4002776 at *5 (E.D. Tex. Aug. 22, 2018) (quoting *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, No. 2:13-CV-909, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015)). The "guiding principles in the customer

suit exception cases are efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted).

A.   **Ford is Merely a Reseller**

Ford and TI agree that TI is the "true defendant" and that Ford is merely a reseller. Docket No. 70 at 45:15–46:11; Docket No. 38 at 9–11. Ford argues that the accused products are not developed by Ford and that there are no allegations that the accused products are modified or specifically adapted for Ford's vehicles. Docket No. 38 at 9–11; *see also* Docket No. 78-1 at 3 (Orris Decl., ¶¶ 4–5), 6 (D'Amato Decl., ¶¶ 4–5). Ford argues it is a party to this suit only because it is a customer of TI, and that if Plaintiff obtains relief from TI, Plaintiff "will have exhausted its rights as a patent holder and will be precluded from collecting duplicative damages with respect to the same accused SoCs from downstream customers like Ford." Docket No. 38 at 10.

In response, Plaintiff argues "[t]he full extent to which Ford contributed to the design and manufacture of the TI Accused Products, and the full extent to which TI contributed to the design and manufacture of the Ford Accused Products, remains unclear." Docket No. 51 at 13. Specifically, Plaintiff points to a video posted by TI that shows an interaction between Doron Elliott, Ford's Supervisor & Technical Expert for In-Vehicle Infotainment Connectivity, and Bob Bloomquist, TI's OEM Sales Manager. *Id.* at 13–14 (citing *TI Enables the Evolution of Ford SYNC® 3*, Texas Instruments (Jan. 16, 2017), https://www.ti.com/video/5273617235001). In the video, TI's OEM Sales Manager explains that TI and Ford worked together on the development of the downstream product. *See id.* Plaintiff also argues that there is technical information within Ford's possession, such as "software that Ford admits it installs 'to affect[] the operation' of the TI SoC's within 'Texas Instruments's defined operation parameters.' " Docket No. 78 at 4 (citing Docket No. 78-1, ¶ 5).

In response, Ford argues that the video does not suggest Ford has a role in the design or manufacture of the accused TI SoCs, but only shows the downstream product contains the TI SoCs. Docket No. 51 at 4. At the hearing, Ford represented that "there is nothing unique to the functioning or particular to the Ford vehicle" that will affect the use of the TI SoCs and explicitly stated "Ford does not and did not contribute to the design and function of this chip." Docket No. 70 at 57:21–59:10. In support of these representations, Ford proffered two declarations that state (1) Ford does *not* make modifications to the hardware components of Texas Instruments' SoC OMAP 5, including any circuitry within TI's SoCs, (2) Ford does *not* install "any software that affects the operation of the SoC OMAP 5 beyond Texas Instruments's defined operation parameters," (3) Ford does not have possession, custody, or control of information, other than standard documentation such as datasheets and user manuals, that shows the design and operation of the SoC OMAP 5, and (4) Texas Instruments does not share technical details with Ford because such technical information is proprietary and strictly confidential to Texas Instruments. Docket No. 78-1 at 3–4 (Orris Decl., ¶¶ 5–6), 6–7 (D'Amato Decl., ¶¶ 5–6).

Ford has persuasively argued that this factor weighs towards an application of the customer-suit exception. Ford has offered two declarations that support its position that it is a mere reseller. Docket No. 78-1. Moreover, TI admits it is the true defendant. Docket No. 70 at 45:15–46:11. Plaintiff's argument that Ford possesses software that alters the operation of TI's SoCs misconstrues Ford's Orris declaration, which states Ford does *not* install software that modifies TI's SoCs. Docket No. 78-1 at 3, ¶ 5. While Plaintiff alleges TI and Ford both directly and indirectly infringe the asserted patents, Plaintiff's allegations focus on TI's products. *See Topia Tech., Inc. v. Dropbox, Inc.,* No. 6:21-CV-01373-ADA, 2022 WL 18109619, at *4 (W.D. Tex. Dec. 29, 2022). While Plaintiff served different claim charts on TI and Ford, the charts themselves

make nearly identical allegations and do not identify alleged modifications or designs specific to Ford. *See infra* Table 1. Accordingly, and as Defendants admit, TI's liability "at least partially" determines Ford's liability. *See infra* Section I.B.2; *see also Topia*, 2022 WL 18109619, at *4. Even if the resolution of Plaintiff's claims against TI does not resolve the indirect infringement claims against Ford, the suit against TI will resolve issues of direct infringement that "will largely determine the outcome of the remaining claims" against Ford. *See id.* Accordingly, the Court determines that this factor of the customer-suit exception weighs in favor of severing and staying the claims against Ford.

      **B.**      **Ford Agrees to be Bound by the Outcome of the Case**

Plaintiff makes two arguments that Ford does not meet this factor. First, Plaintiff argues that the suit against TI itself will not resolve all issues against Ford. Docket No. 51 at 11–12. Second, Plaintiff argues that Ford's agreement to be bound is insufficient. *Id*. Both arguments fail.

            **1.**      **The method claims here do not warrant different treatment**

Ford generally argues that "[d]irect infringement of [the] method claim[s] by Ford will therefore rise and fall based on the analysis of the features and functionalities internal to the accused SoCs." Docket No. 57 at 5. First, Ford points to the fact that the claim charts for Ford and TI primarily rely on the same evidence (*i.e.*, TI technical documents). *See id.* Second, Ford argues that all the asserted method claims "recite steps that must be performed by *modules within the integrated circuit*—not Ford's vehicles." *Id* at 4–5.

Plaintiff's main argument against severing and staying the cause of action against Ford is that the claims asserted against Ford and TI are method claims. Plaintiff argues that the method claims should be treated differently under the customer suit doctrine because Ford, or others under Ford's direction or control, need to be shown to perform each step of the method claim. Docket

No. 51 at 6, 9–11 (citing *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 1659924, at *4 (E.D. Tex. Apr. 26, 2016); *Corydoras Techs., LLC v. Best Buy Co.*, No. 2:19-CV-00304-JRG-RSP, 2020 WL 1275782, at *4 (E.D. Tex. Mar. 17, 2020); *SAS Inst. Inc. v. World Programming Ltd.*, No. 2:18-CV-00295-JRG, 2019 WL 8331447, at *2 (E.D. Tex. Apr. 4, 2019)).

The Court has carefully reviewed the claim charts presented by the parties in support of their respective arguments. Ford persuasively argues that the facts here are distinguishable from the cases cited by Plaintiff because the only infringing activities related to Ford are not actually tied to Ford's downstream products. *See generally* Docket No. 57 at 5–6; *see also infra* Table 1.

| Table 1[1] | | | |
|---|---|---|---|
| **Patent (col. 1)** | **Claim(s) (col. 2)** | **Downstream-product related (col. 3)** | **TI-SoC related[2] (col. 4)** |
| '818 patent | 1 (apparatus) | *Compare* Docket Nos. 1-7 (TI) at 2 *with* 1-13 (Ford) at 2–3. | *Compare* Docket Nos. 1-7 at 3–32 *with* 1-13 at 4–33. |
| '449 patent | 10 (method) | *Compare* Docket Nos. 1-8 (TI) at 2 *with* 1-14 (Ford) at 2–3. | *Compare* Docket Nos. 1-8 at 3–54 *with* 1-14 at 4–54. |
| '052 patent | 6 (method) | *Compare* Docket Nos. 1-9 (TI) at 2 *with* 1-15 (Ford) at 2–3. | *Compare* Docket Nos. 1-9 at 3–45 *with* 1-15 at 4–44. |
| '9893 patent | 4 (method) | *Compare* Docket Nos. 1-10 (TI) at 2 *with* 1-16 (Ford) at 2–3. | *Compare* Docket Nos. 1-10 at 3–58 *with* 1-16 at 4–58. |
| '800 patent | 12 (method) | *Compare* Docket Nos. 80-5 (TI) at 2 *with* 80-6 (Ford) at 2–5. | *Compare* Docket Nos. 80-5 at 3–105 *with* 80-6 at 5–109. |

As summarized in Table 1, above, the preamble of these claims is the only part of the Ford claim charts that relies on evidence specific to the Ford downstream product. *See supra* Table 1 at col. 3. This evidence does not rely on specific characteristics of the downstream products to show infringement aside from the mere incorporation of the accused TI SoCs into Ford's downstream

---

[1] The '2893 patent is not addressed in Table 1 because different claims are asserted against Ford and TI. This issue is addressed below. *See infra* Section I.B.2.

[2] Although there are some variations in the allegations in these portions of the claim charts, most of the evidence cited on these pages is identical for both TI and Ford.

products. *See id*. The remainder of these charts rely on evidence related to the internal workings of the TI SoCs and nearly identical allegations related to the internal workings of the accused TI products. *Id.* at col. 4. The steps related to the accused products are internal to the TI SoCs. *See, e.g.*, Docket No. 57 at 5–6; *see also* Table 1 at col. 4. Furthermore, Ford has shown it is a mere reseller because it proffered evidence it does not modify the hardware or install software that modifies TI's SoCs. *See supra* Section I.A. Accordingly, Plaintiff's argument that method claims should be treated differently is unpersuasive based on the record before the Court.

      **2.**    **Resolution of all issues is unnecessary**

Plaintiff also argues severing and staying the case is inappropriate because a suit against TI will not resolve all issues against Ford. Plaintiff argues that issues related to Ford's intent and Ford's importation of accused products will not be resolved. Docket No. 51 at 8–13. Plaintiff also argues the '2893 patent claim asserted against Ford but not TI will not be resolved. *Id*. Ford acknowledges that the suit against TI will not entirely[3] resolve these issues. *See e.g.*, Docket No. 78 at 3; Docket No. 57 at 5. But Ford argues that a severance and stay is appropriate when there is "the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Id.* at 6 (citing *Spread Spectrum*, 657 F.3d at 1358)).

Ford persuasively argues that severing and staying the case against it is appropriate because the suit against TI will resolve major issues. Issues such as Ford's intent and Ford's importation of the accused products are ancillary. *See e.g.*, *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd*., No. 2:22-CV-00126-JRG-RSP, Docket No. 141 at 5–6 (E.D. Tex. Aug. 3, 2022) (finding the residual

---

[3] Ford argues that the '2893 claims against Ford and TI rely on "identical evidence" and that claims 1 and 10 of "are *substantively* the same claim." Docket No. 57 at 3–4. The Court declines to evaluate the similarity of these claims at this time and resolves the dispute by assum*ing arguendo* that claims 1 and 10 are different.

issues related to importation did not override the applicability of the customer-suit exception); *Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*, No. 2:21-CV-0453, 2023 WL 318466, at *3 (E.D. Tex. Jan. 19, 2023) (same); *see also Topia*, 2022 WL 18109619, at *4 (finding severance and stay appropriate even when issues related to induced infringement were only partially resolved). Further, the resolution of direct infringement of most of the claims through the suit against TI weighs towards applying this exception even though the suit against TI may not fully resolve the '2893 claim against Ford. *See Topia,* 2022 WL 18109619, at *4 ("While some claims against [customers] may persist after the outcome of [plaintiff's] claims against [manufacturer], the outcome of the claims against [manufacturer] will resolve the major issues concerning the claims against the customer." (internal quotations omitted)). Accordingly, even if some issues against Ford may survive a suit against TI, the customer suit exception is appropriate here because these issues "will be greatly simplified by first resolving the claims against [TI]." *Id.*

### 3. Ford's stipulation and representations are sufficient

Ford agrees to be bound by any judgment by the Court on Plaintiff's claims against TI. Docket No. 38 at 11. Specifically, Ford agrees

> [T]o be bound by any final, non-appealable judgment on Plaintiff Network System Technology's ("NST's") claim for direct infringement against Texas Instruments Incorporated ("TI") irrespective of whether such claim has been made against Ford (e.g., NST's infringement claim against TI of claim 10 of US 8,072,893); any claim construction rulings issued by the Court; and by any final, non-appealable judgment regarding the validity of any of NST's asserted patents (which include US 7,366,818, US 7,373,449, US 7,594,052, US 7,769,893, US 8,072,893 and US 8,086,800).

Docket No. 78-2 at 2. Ford does not stipulate that a finding of infringement by TI will result in a finding of *indirect* infringement or willfulness by Ford. *Id.* This stipulation is consistent with Ford's position at the hearing regarding severance, where Ford represented that a second *Markman* hearing would be unnecessary because "if there were claims that remained after the liability phase

with respect to TI was decided, I don't see claim construction. . . would remain." Docket No. 70 at 44:25–45:12. Specifically, Ford acknowledges that the remaining issues with respect to infringement would be related to intent after the allegations against TI are resolved. *Id.*

Plaintiff contends Ford's stipulation and representations are insufficient. Docket No. 78 at 3–4. Plaintiff argues Ford should have accepted revisions to the stipulation that would have mitigated issues identified by Plaintiff. *Id.*; *see also* Docket No. 78-3. Plaintiff argues Ford's agreement to be bound does not address that there are different claims of the '893 patent asserted against TI and Ford that would require re-litigation. *Id.* at 3. Plaintiff's solution is that Ford should be bound such that a finding that TI infringes claim 10 of the '893 patent means Ford infringes claim 1 of the same patent. *Id.* Furthermore, Plaintiff argues that "even if it is found that TI does not perform all steps," Ford should be bound "by any finding that TI infringes one or more steps of such claims so that infringement of those steps would not have to be re-litigated in a subsequent case against Ford." *Id.* at 3–4.[4] Plaintiff also "proposed [the] insertion of language clarifying that Ford would be liable for its importation of TI's infringing chips if TI successfully argues that such chips were not made, used, sold, offered for sale, or imported into the United States, outside of such importation by Ford, its suppliers, or others under the direction or control of Ford." *Id.* at 4. Finally, Plaintiff asks that Ford be required to produce certain information that should have been

---

[4] Plaintiff also argues that Ford should "agree[] to be bound by any claim construction rulings issued by the Court and [agree to] not challenge the validity, or assist in the challenge of the validity, of any of NST's patents based on any grounds or prior art references raised by TI." Docket No. 78 at 3–4. But the unmodified stipulation agrees that Ford will be bound by any claim construction rulings issued by the Court and any final, non-appealable judgments regarding validity. Docket No. 78-2; Docket No. 78 at 2.

produced pursuant to Local Rule CV-26(d), such as software[5] that affects the operation of TI's SoCs. *Id.*

Here, Ford's agreement to be bound is consistent with, and sometimes exceeds, the agreements to be bound that other customers have proffered when the customer-suit exception is applicable. Ford's stipulation to be bound by the Court's claim construction and any final rulings on infringement[6] and validity "reinforce[s] that the [] claims against the Customer Defendants are peripheral to the central infringement dispute in this lawsuit." *Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 1-14-CV-356-LY, 2015 WL 10818739 at *3 (W.D. Tex. Aug. 21, 2015); *see also CyWee*, 2018 WL 4002776, at *6 (finding agreement to be bound by infringement determination supported the rationale of applying the customer suit exception); *see also Arigna Tech.*, No. 2:22-CV-00126-JRG-RSP, Docket No. 141 at 5–6; *see also e.g.*, *Saint Lawrence Commc'ns LLC v. Apple Inc.*, No. 2:16-cv-82-JRG, 2017 WL 3712912 at *2 (E.D. Tex. Jul. 12, 2017); *Lighthouse Consulting Grp., LLC v. Truist Bank*, No. 2:19-CV-00340-JRG, 2020 WL 6781977, at *2 (E.D. Tex. Apr. 7, 2020). Furthermore, even though such language is not explicitly included in Ford's stipulation, Ford's representation to the Court that additional *Markman* hearings will be unnecessary also weighs towards severance and stay. *See Katz,* 909 F.2d at 1464 (finding that although defendants did not agree to be bound by action against manufacturer the court did not abuse its discretion by relying on defendants' representations that resolution of the

---

[5] As discussed, the Court has relied on Ford's declarations and representations to dismiss this apparent misreading of Ford's declaration by Plaintiff. *See supra* Section II.A.2. Ford states it does *not* install software and Ford represented that Ford does not do anything separate or unique that affects the function of the chip. Docket Nos. 78-1, 70 at 57:21–59:10.

[6] Ford's status report, however, questions how a jury could determine TI infringes certain steps but not others if TI is ultimately found not to infringe. Docket No. 78 at 2. Ford has agreed to be bound by the Court's final judgment—it is premature to speculate about the verdict form's specificity.

manufacturer's actions would resolve "major issues before that court, including patent infringement, patent validity, and [] capacity to sue"); Docket No. 70 at 44:25–45:12. Accordingly, Plaintiff fails to persuasively argue that Ford's agreement to be bound is insufficient.

### C. TI is the Only Source of the Infringing Product

Ford alleges TI is the only source of the accused products.[7] Docket Nos. 38 at 11–12; 78-1 at 3 (Orris Decl., ¶ 4 (stating that TI sends the accused products to Panasonic and Flex Ltd. to build the infotainment system)), 6 (D'Amato Decl., ¶ 4 (stating TI provides the accused SoCs to Aptiv PLC to incorporate the SoCs into driver assistance modules)). Plaintiff identifies no allegations in its complaint, or the claim charts, that state otherwise. Accordingly, this factor weighs towards severance and stay. *See e.g.*, *Dali Wireless, Inc. v. Ericsson Inc.*, No. 6:22-CV-01313-ADA, 2023 WL 1423990, at *4 (W.D. Tex. Jan. 30, 2023) ("[Plaintiff] does not allege in its complaint or in the infringement allegations that [customer defendant] infringes the asserted patents independently of [manufacturer defendant's] system.").

## II. Traditional Stay Factors

The Court gives great weight to the three factors considered under the customer-suit exception, but the Court will also consider the traditional stay factors for the sake of completeness. *See GreatGigz Sols., LLC v. Costco Wholesale Corp.*, No. 6-21-CV-00807, 2022 WL 1037114, at *3 (W.D. Tex. Apr. 6, 2022). These factors include "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the

---

[7] While Ford's motion to sever and stay was pending, Ford filed a motion for a protective order alleging that Plaintiff is seeking broad discovery related to non-accused products. Docket No. 93. Plaintiff had not responded to this motion by the time of this order. While reasonable discovery related to non-TI SoCs may be relevant, the Court understands, per Plaintiff's own representations, there are no allegations as to non-TI SoCs. *See e.g.*, Docket Nos. 51 at 13–15 (discussing only TI-supplied accused products), 78 at 3–4 (same).

issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *Id.* at *2.

First, Plaintiff will not be unduly prejudiced because discovery in this matter largely focuses on the "true defendant," TI. *See supra* Section I.A; *GreatGigz Sols.*, 2022 WL 1037114, at *4 (finding a stay was not unduly prejudiced because the suits focused largely on "the entity engaged in design, development, and sale of the accused products"). As discussed above, Ford represents it is not in possession, custody, or control of technical information related to the design or operation of the TI SoCs. Docket No. 78-1, ¶ 6. To the extent Plaintiff argues it needs discovery from Ford to determine TI's intent and knowledge, Plaintiff should be able to obtain such information from TI. Accordingly, this factor weighs towards granting a stay.

Second, Plaintiff's argument that severance and stay will not resolve all issues is likewise unpersuasive. *See supra* Section I.B.2. The case against TI will simplify the case by resolving whether the accused products directly infringe most claims. *See id.* After a trial against TI, there will only be one defendant and the remaining issues will be simplified. *Id.*

Finally, although a trial date has been set and discovery has begun, this case is still in its relatively early stages. The *Markman* hearing is currently scheduled for November 8, 2023. Docket No. 49 at 5. And fact discovery does not close until February 6, 2024, with expert discovery set to end March 26, 2024. Docket No. 49 at 4. Plaintiff only addresses the stage of discovery to argue that it needs to perform discovery as to Ford's role in the design, manufacture, and importation of the accused products. *See e.g.*, Docket No. 51 at 13–15. But, as discussed above, Ford has represented to this Court, both through counsel and through declarations, that it is *not* involved in the design or manufacture of the accused products. Finally, although a trial date has been set for October 2024, trial is over a year away from the date of this order. *Id.* at 1. Accordingly, the last

two factors weigh towards granting a stay. *Lighthouse Consulting Grp*, 2020 WL 6781977, at *2 (finding a stay appropriate when the case was still in the early stages of discovery and trial was over a year away).

*   *   *

For these reasons, it is

**ORDERED** that Ford's motion to sever and stay the case (Docket No. 38) is **GRANTED**. Because the Court has granted Ford's motion to sever and stay, it is further

**ORDERED** that Ford's motion for a protective order (Docket No. 93) is **DENIED WITHOUT PREJUDICE** as premature. It is

**ORDERED** that Plaintiff's cause of action against Ford is **SEVERED** into a separate case. The Clerk of Court is directed to designate a new cause number for the severed case. It is further

**ORDERED** that the severed case regarding Plaintiff's claims against Ford is **STAYED**. Ford and TI **SHALL** file a status report in the severed case within **thirty (30) days** of a final, non-appealable judgment in Case No. 2:22-CV-482.

**So ORDERED and SIGNED this 26th day of September, 2023.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE