**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>TEXAS INSTRUMENTS INCORPORATED,<br><br>        Defendant. | Civil Action No. 2:22-cv-482-RWS<br><br>JURY TRIAL DEMANDED |

**TEXAS INSTRUMENTS' MOTION TO STRIKE**
**CERTAIN DAMAGES OPINIONS OF NST'S EXPERTS**

1

**TABLE OF CONTENTS**

I.    LEGAL STANDARD ................................................................................................ 1

II.   ARGUMENT .......................................................................................................... 1

     A.    Bratic's Opinions Counting Foreign Sales Under § 271(f)(2) Must Be Stricken... 1

          1.    Bratic's new § 271(f)(2) theory is legally unsupported. ............................ 2

          2.    Bratic's § 271(f)(2) infringement theory is untimely and prejudices TI. ... 4

     B.    Bratic's Opinions Based On Internet Rumors Must Be Stricken. ......................... 8

     C.    Bratic's Legal Opinions Regarding The Arteris-TI License Must Be Stricken...... 9

     D.    Bratic's Reasonable Royalty Opinions Must Be Stricken. .................................. 10

     E.    Bratic's Royalty Rate Violates Apportionment Law And Must Be Stricken. ....... 13

     F.    Unwarranted References To TI's Total Revenues Must Be Stricken. ................... 13

III.  CONCLUSION ..................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015) ................................................................................... 10, 12

*Bell v. Ascendant Sols., Inc.*,
No. CIV.A. 301CV0166N, 2004 WL 1490009 (N.D. Tex. July 1, 2004), *order aff'd
and remanded*, 422 F.3d 307 (5th Cir. 2005) ...................................................................... 8

*Bmc Software, Inc. v. Servicenow, Inc.*,
2016 WL 379620 (E.D. Tex. 2016).................................................................................... 15

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
576 F.3d 1348 (Fed. Cir. 2009) (*en banc*).............................................................. 2, 3, 4, 11

*Commonwealth Sci. & Indus. Res. Org. v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015) ..................................................................................... 1, 13

*Corus Realty Holdings, Inc. v. Zillow Group, Inc.*,
860 Fed. Appx. 728 (Fed. Cir. 2021) .................................................................................. 7

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ......................................................................................................... 1, 2

*Eidos Display, LLC v. AU Optronics Corporation et al.*,
No. 6:11-CV-00201-JRG, 2017 WL 1322555 (E.D. Tex. Mar. 29, 2017)................... 14, 15

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
No. 2:22-CV-00125-JRG, 2023 WL 8281905 (E.D. Tex. Nov. 29, 2023) ........................... 4

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ......................................................................................... 15

*Fenner Invs., Ltd. v. Juniper Networks Inc.*,
236 F.R.D. 309 (E.D. Tex. 2006) ........................................................................................ 5

*Finesse Wireless, LLC v. AT&T Mobility, LLC*,
No. 221CV00316JRGRSP, 2022 WL 17875791 (E.D. Tex. Dec. 21, 2022)....................... 4

*Hancock v. City of Corpus Christi*,
No. 2:17-cv-327, 2018 WL 11472791 (S.D. Tex. Oct. 4, 2018).......................................... 7

*Infernal Tech. LLC v. Activision Blizzard Inc.*,
No. 3:18-CV-01397-M, 2021 WL 4391250 (N.D. Tex. Sept. 16, 2021) ........................... 11

*Knight v. Kirby Inland Marine Inc.*,
482 F.3d 347 (5th Cir. 2007) .............................................................................................. 9

ii

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ............................................................................................................ 1

*Lucent Techs. Inc. v. Gateway Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ......................................................................................... 13

*Microsoft Corp. v. AT & T Corp.*,
   550 U.S. 437 (2007) ............................................................................................................ 3

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
   747 F.3d 1326 (Fed. Cir. 2014) ......................................................................................... 15

*Orion IP, LLC v. Staples, Inc.*,
   407 F. Supp. 2d 815 (E.D. Tex. 2006) ................................................................................ 6

*Ormco Corp. v. Align Tech., Inc.*,
   463 F.3d 1299 (Fed. Cir. 2006) ......................................................................................... 11

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
   52 F.3d 1026 (Fed. Cir. 1995) ........................................................................................... 12

*Oyster Optics, LLC v. Coriant (USA) Inc.*,
   No. 2:16-cv-01302-JRG, Dkt. 222 (E.D. Tex. Jan. 8, 2018)............................................... 7

*Packet Intel. LLC v. NetScout Sys., Inc.*,
   965 F.3d 1299 (Fed. Cir. 2020) ......................................................................................... 11

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
   No. 2:15-CV-01366-JRG, 2021 WL 357495 (E.D. Tex. Feb. 2, 2021) ................................ 5

*Personalized Media Commc'ns, LLC v. Zynga, Inc.*,
   No. 212CV00068JRGRSP, 2013 WL 5962812 (E.D. Tex. Nov. 7, 2013) ........................... 2

*Primrose Op. Co. v. Nat'l Am. Ins. Co.*,
   382 F.3d 546 (5th Cir. 2004) ............................................................................................... 6

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ........................................................................................... 12

*Soden v. Freightliner Corp.*,
   714 F.2d 498 (5th Cir. 1983) ............................................................................................... 8

*Tomax AS v. Turbo Drill Indus., Inc.*,
   No. 6:21-CV-00260-ADA, 2023 WL 3171744 (W.D. Tex. Apr. 6, 2023) ........................... 7

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ......................................................................................... 14

*Vandenberg v. Dairy Equip. Co., a Div. of DEC Int'l*,
   740 F.2d 1560 (Fed. Cir. 1984) ......................................................................................... 15

*Vocalife LLC v. Amazon.com, Inc.*,
     No. 2:19-CV-00123-JRG, 2020 WL 5815950 (E.D. Tex. Sept. 30, 2020) ......................................... 11

*WhereverTV, Inc. v. Comcast Cable Commc'ns, LLC*,
     No. 2:18-CV-529-JLB-NPM, 2022 WL 2751752 (M.D. Fla. July 14, 2022) ..................................... 10

**Statutes & Other Authorities**

35 U.S.C. § 286 ............................................................................................................................ 3

Fed. R. Civ. P. 26(a)(1) ............................................................................................................... 5

Fed. R. Evid. 702 ..................................................................................................................... 1, 15

Local Rule CV-5(a)(3) ................................................................................................................ 18

Local Rule CV-5(a)(7)(B) .......................................................................................................... 18

TI respectfully moves to strike certain damages-related opinions offered by NST's experts: (1) opinions counting foreign sales, both because the opinions misapply § 271(f)(2) and because NST never disclosed a § 271(f)(2) theory of infringement (*infra* § II.A); (2) opinions interpreting a TI license based on internet "rumor[s]" and erroneous legal conclusions (*infra* §§ II.B–C); (3) reasonable royalty opinions that impermissibly encompass non-infringing activities and violate apportionment law (*infra* § II.D–E); and (4) references to TI's total revenues that violate the Entire Market Value Rule (EMVR) (*infra* § II.F).

## I.    LEGAL STANDARD

Expert opinion testimony is admissible only when "the proponent demonstrates to the court that" the testimony "is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case," among other requirements. Fed. R. Evid. 702 (as amended December 1, 2023); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). The Court's gatekeeping role is vital for patent damages opinions, "given the great financial incentive parties have to exploit the inherent imprecision in patent valuation." *Commonwealth Sci. & Indus. Res. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015).

## II.    ARGUMENT

### A.    Bratic's Opinions Counting Foreign Sales Under § 271(f)(2) Must Be Stricken.

NST's damages expert, Mr. Walter Bratic, improperly bases damages on § 271(f)(2), an undisclosed and unsupported theory. Bratic opines: "TI's domestic act of designing a component that it knew would be made or adapted for use in the Accused Products with the intention of being combined outside the United States in a manner that would infringe is an act of infringement of

1

the Patents-in-Suit in this matter." Ex. 1 (Expert Report of Walter Bratic ("Bratic Rpt.")), ¶ 200.[1]

Bratic then relies on this theory to include TI's non-U.S. sales of accused products in his royalty

base. *Id*., ¶ 79. As set forth below, Bratic's § 271(f)(2) theory must be stricken for two independent,

overarching reasons: (1) it is legally unsupported, and (2) it was not timely disclosed. Bratic's

royalty base calculation relies on this improper infringement theory and should also be stricken.

          1.      <u>Bratic's new § 271(f)(2) theory is legally unsupported</u>.

Bratic's theory misconstrues and misapplies § 271(f)(2) in *five different ways*. *See*

*Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 212CV00068JRGRSP, 2013 WL

5962812, at *2 (E.D. Tex. Nov. 7, 2013) (excluding under *Daubert* where expert "misstates the

law"). *First*, § 271 contradicts NST's actual theory of infringement. Section "271(f) applies only

to such **components** as are **combined** to form the patented invention at issue." *Cardiac*

*Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1363 (Fed. Cir. 2009) (*en banc*) (emphasis

added) (quotation marks omitted). Bratic identifies no component that TI supplies for combination

into a patented invention, and the unrebutted record establishes that TI supplies no such

component. NST's own **technical expert** alleges infringement based on TI's sale of the "Accused

Products **which meet each and every limitation** of [the asserted patents]." Ex. 2 (Expert Report of

Erik de la Iglesia Regarding Infringement By Texas Instruments ("Iglesia Op. Rpt.")), ¶ 123

(emphasis added); *see also* Ex. 3 (Expert Report of Robert P. Colwell, Ph.D., Regarding

Noninfringement ("Colwell Reb. Rpt.")), ¶ 420 (no evidence "that TI sells and/or manufactures

any part or component intended to be incorporated into a product purportedly covered by the

Asserted Patents, which are directed to integrated circuit inventions as a whole."). Section

271(f)(2) simply does not apply to NST's theory of infringement by **complete** TI devices.

---

[1] Exhibits cited herein refer to the exhibits attached to the Declaration of Udit Sood in Support of TI's Motion To Strike Certain Damages Opinions of NST's Experts. ("Sood Decl.").

*Second,* even if TI supplied "components" (it does not), Bratic misapplies § 271(f)(2) by proposing liability based on TI's intangible "act of ***designing*** a component in the United States." Ex. 1 (Bratic Rpt.), ¶ 200. Section 271(f)(2) requires "the transfer of a ***physical object***." *Cardiac,* 576 F.3d at 1364 (emphasis added). It does not cover the supply of a design, like "a blueprint (or anything else containing design information)," because Congress did not "include[] within § 271(f)'s compass . . . information, instructions, or tools from which [] components readily may be generated." *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 448–51 (2007).

*Third*, even assuming § 271(f)(2) covered "designing" (it does not), Bratic does not identify ***any*** act of "designing" that TI performed domestically and within six years of suit. *See* 35 U.S.C. § 286 (six-year statute of limitations). NST does not (and cannot) dispute that the allegedly infringing feature (the Arteris "interconnect") was designed ***abroad*** and ***more than 6 years before this lawsuit***. *See, e.g.*, Ex. 1 (Bratic Rpt.), ¶¶ 37, 111–112, 130 (TI had adopted Arteris interconnects as of July 2010); Ex. 4 (Expert Rebuttal Report of Erik de la Iglesia dated Mar. 5, 2024 ("Iglesia Reb. Rpt.")), ¶¶ 5 (accused products developed "between at least 2007 and 2012"), 69; Ex. 5 (Castille Tr.) at 138:16–141:20.

*Fourth*, Bratic's theory circumvents the Court's orders holding that NST failed to plausibly plead TI's pre-suit knowledge of any asserted patent. Dkt. 95; Dkt. 179. Section 271(f)(2) creates liability only for "knowing" and "intending" infringement, yet Bratic counts TI's ***pre-suit*** foreign sales, alleging that "TI's domestic act of designing a component that ***it knew*** would be made or adapted for use in the Accused Products ***with the intention*** of being combined outside the United States in a manner that would infringe is an act of infringement." Bratic Rpt., ¶ 200 (emphases added). The Court's prior orders foreclose Bratic's § 271(f)(2) theory as to pre-suit sales.

3

Bratic's theory also fails as to post-suit sales because (i) Bratic identifies no instance of TI knowingly supplying a tangible **component** (*i.e.*, part of a complete integrated circuit) after NST filed suit, and (ii) Bratic "never opines as to the intent element or recites any other fact to support a factual finding that [TI] had the requisite mental state." *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:22-CV-00125-JRG, 2023 WL 8281905, at *3–4 (E.D. Tex. Nov. 29, 2023).

*Fifth*, "Section 271(f) does not cover method claims," and "[t]he law is unequivocal that the sale of equipment to perform a process is not a sale of the process." *Cardiac*, at 1359. Equally, mere supply of a "component" cannot infringe a method patent, and the plain language of § 271(f) "makes it clear that it does not extend to method patents." *Id.,* at 1362. Here, NST asserts only method claims for **four of five asserted patents**, but Bratic calculates royalties on *all foreign sales* by assuming infringement under § 271(f) of *all asserted patents*. *See* Bratic Rpt., ¶¶ 6, 22, 79 (calculating royalties on foreign sales assuming infringement of all "Patents-in-Suit"). Bratic's failure to account for the fact that § 271(f) *categorically **does not apply*** to 80% of NST's asserted patents is facially and legally erroneous. Thus, Bratic's § 271(f)(2) theory must be excluded.

2.      <u>Bratic's § 271(f)(2) infringement theory is untimely and prejudices TI</u>.

NST never disclosed Bratic's flawed § 271(f) theory in its infringement contentions. This is a sufficient and independent basis to exclude this theory, even putting aside the substantive defects identified above. *See Finesse Wireless, LLC v. AT&T Mobility, LLC*, No. 221CV00316JRGRSP, 2022 WL 17875791, at *10 (E.D. Tex. Dec. 21, 2022) (citations omitted) ("[e]xpert infringement reports may not introduce theories not previously set forth in infringement contentions.").

a)      *NST did not put TI on notice of Bratic's § 271(f)(2) theory.*

NST never disclosed any § 271(f)(2) theory in its infringement contentions—neither in the original contentions served on April 25, 2023, nor in its improper amended contentions served in February, 2024. *See* Ex. 6 (Appendix B1 of NST's Apr. 25, 2023, Infringement Contentions); Ex.

4

7 (Appendix B1 of NST's Feb. 2, 2024, Amended Infringement Contentions). NST's contentions do not identify any "component" (*i.e.*, a tangible but incomplete part) of an integrated circuit that TI makes domestically for combination into an infringing integrated circuit abroad. *Fenner Invs., Ltd. v. Juniper Networks Inc.*, 236 F.R.D. 309, 310–11 (E.D. Tex. 2006) (no proper disclosure of § 271(f) theory when contentions "do not identify the components at issue or, in any other way, identify [plaintiff's] specific theory of infringement under 271(f).").

NST's Initial Disclosures likewise fail to disclose any § 271(f) infringement theories. NST needed to disclose "the legal theories and, in general, the factual bases of [NST's] claims," in lieu of Rule 26(a)(1) mandated disclosures. Dkt. No. 48, ¶ 1(c). Instead, NST only accused TI of infringement (i) under §§ 271(a) and 271(g) for "making, using, offering to sell, selling and/or importing infringing products within the United States, including in the Eastern District of Texas," and (ii) under §§ 271(b)–(c) for "inducing and contributing to the infringement of the Asserted Patents by others." Ex. 8 (NST's May 23, 2023, Initial Disclosures). NST did not accuse TI of infringing under § 271(f) by exporting or even designing components. *Id.*; *see, e.g., Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 2:15-CV-01366-JRG, 2021 WL 357495, at *4 (E.D. Tex. Feb. 2, 2021) (striking legal theories not disclosed in Initial Disclosures).

NST's other filings and disclosures similarly fail to disclose any § 271(f) theory. In its various complaints, NST alleged infringement under §§ 271(a), (b) and (c), but never § 271(f). *See* Dkt. 1 (Complaint), ¶¶ 150–153, 175–178, 200–203, 225–228, 250–253; Dkt. 106 (First Amended Complaint), ¶¶ 114–117, 131–134, 148–151, 165–168, 182–185. Likewise, on February 7, 2024, just six days before Bratic included this new theory in his expert report, NST sought to file a "Second Amended Complaint," which again limited NST's claims to §§ 271(a), (b) and (c). *See generally* Dkt. 156. Finally, NST's technical expert never articulates a § 271(f)

infringement theory. He opines that the Accused Products *themselves* "meet each and every limitation" of the asserted claims (Ex. 2 (Iglesia Op. Rpt.), ¶ 123), never alleging any export or domestic supply of *components* (tangible but incomplete parts) of a patented invention by TI.

b)      *NST's failure to disclose is neither justified nor harmless.*

To determine whether a failure to disclose was substantially justified or harmless, the Court considers four factors: (1) the explanation for the party's failure to disclose; (2) the importance of the matter that was not disclosed; (3) the prejudice to the opposing party; (4) the possibility of curing such prejudice with a continuance. *Primrose Op. Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563–64 (5th Cir. 2004). Here, each factor favors striking Bratic's new § 271(f)(2) theory.

*First*, NST has no justification for its failure to timely disclose. "[P]laintiffs," in their infringement contentions, "should provide specific theories of infringement and representative examples of the alleged infringement so as to give defendants fair notice of infringement[.]" *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006). Since *June 2023*, NST has possessed all information relevant to its untenable "design" theory of infringement under § 271(f)(2), including details regarding the locations where each of "the design, development, [and] manufacture" of accused TI products occurred. Ex. 9 (TI's response to NST's Interrogatory No. 4). NST has also, since June 2023, possessed technical documentation and source code regarding each accused product. Sood Decl., ¶ 22; Ex. 21. There is no reason NST could not have disclosed its (misplaced) theory during discovery. And to the extent the *volume* of TI's extraterritorial sales animated NST's invocation of § 271(f)(2), NST has had TI's foreign sales data since *November 2023*. Ex. 10 (Abraham 11/30/2023 email). Notably, NST sought this data emphasizing their relevance to NST's *§ 271(a)* infringement theories. Ex. 11 (Huntington 11/13/2023 email) ("It makes no difference where the sales occurred since, despite being sold abroad, *infringing chips are imported into the U.S.*") (emphasis added). Despite apparently deciding to venture a new,

6

component-***exportation*** theory, NST never sought leave to supplement its contentions. NST's failure to do so warrants striking Bratic's undisclosed § 271(f)(2) theory. *See Corus Realty Holdings, Inc. v. Zillow Group, Inc.*, 860 Fed. Appx. 728, 734 (Fed. Cir. 2021) ("[S]olely submitting an untimely expert report containing such contentions cannot be sufficient" when "[t]he local rule mandates supplementation of infringement contentions[.]").

*Second*, Mr. Bratic's theory is legally unimportant because it is futile. *Cf. Hancock v. City of Corpus Christi*, No. 2:17-cv-327, 2018 WL 11472791, at *3 (S.D. Tex. Oct. 4, 2018) (allegations that are futile cannot be important). For each of the five independent reasons discussed above in Section II.A.1, Bratic's theory is legally indefensible.

*Third*, TI will be prejudiced if Bratic's § 271(f) theory is not excluded. Where, as here, "[d]iscovery is closed, claim construction is complete, and trial draws near, looming on the horizon a mere six months away," this District finds prejudice that cannot be cured by a continuance. *Oyster Optics, LLC v. Coriant (USA) Inc.*, No. 2:16-cv-01302-JRG, Dkt. 222, at 4 (E.D. Tex. Jan. 8, 2018). By introducing, at this late stage, a legally erroneous and counterfactual theory, Bratic seeks an unfair and prejudicial backdoor to the Court's orders finding no pre-suit knowledge. *See* Dkts. 95, 179. NST should not be permitted to expand its case by ambush. *See Tomax AS v. Turbo Drill Indus., Inc.*, No. 6:21-CV-00260-ADA, 2023 WL 3171744, at *4 (W.D. Tex. Apr. 6, 2023) ("The Court finds that prejudice occurs when the Defendant is forced to respond to infringement theories that it sees for the first time in the expert's infringement report.").

*Fourth*, a continuance would not cure TI's prejudice. To the contrary, a continuance would compound the prejudice by requiring TI to investigate the still-unspecified factual underpinnings of NST's new theory, including *which* component(s) NST alleges TI supplied within or from the United States and *when* NST alleges the components were supplied. This additional undertaking

7

and burden are unwarranted because, as discussed above, NST's theory is fundamentally flawed. Thus, Bratic's royalty base, derived by applying § 271(f)(2) to include all non-U.S. sales of accused products starting 6 years prior to NST's complaint, must be stricken. Bratic Rpt., ¶ 79.

**B.    Bratic's Opinions Based On Internet Rumors Must Be Stricken.**

Citing three webpages—from Arteris, Deep Chip, and Fierce Wireless—Bratic states that Qualcomm acquired Arteris's business for "a purchase price **rumored** to be $224 million." Bratic Rpt., ¶ 65 & n.187 (emphasis added). Without explanation or justification, Bratic relies on this rumored purchase price to opine on an unrelated topic: the scope of TI's 2007 license agreement with Arteris ("Arteris-TI License"). *Id*., ¶¶ 111–12 (reasoning that, while "Qualcomm is believed to have paid more than $220 million to acquire technology rights from Arteris," TI paid much less under the Arteris-TI License, therefore the license must have been narrow in scope).

The Court should strike these plainly improper rumor-based opinions. "[W]hile Internet rumors may one day be an acceptable basis for expert opinion in a court, use of them is not at present a reliable methodology." *Bell v. Ascendant Sols., Inc.*, No. CIV.A. 301CV0166N, 2004 WL 1490009, at *3 (N.D. Tex. July 1, 2004), *order aff'd and remanded*, 422 F.3d 307 (5th Cir. 2005); *see also Soden v. Freightliner Corp.*, 714 F.2d 498, 502 (5th Cir. 1983) (courts must examine reliability of sources). There is no dispute the $224 million purchase price is pure speculation. The "Deep Chip" page presents unattributed gossip: "***Word is*** in an internal meeting the Arteris CFO said it's a $224M deal, which seems high." *Id*. (citing https://www.deepchip.com/items/0528-05.html); Ex. 12 (Bratic's cited Deep Chip webpage), at 3 (emphasis added).[2] The Fierce Wireless webpage merely relays that gossip. Ex. 13 (Bratic's cited

---

[2] "Deep Chip" purports to be a collection of "latest news & ***rumors*** . . . heard about EDA and fabs," and includes the author's disclaimer: "Relax. This is a discussion. ***Anything said here is just one engineer's opinion***." Ex. 12, at 1, 5 (emphases added).

8

████████████████████████████████████████████████████

Fierce Wireless webpage) at 1. ("Deep Chip reported a *rumored* $224 million price tag last week.") (emphasis added); Bratic Rpt., ¶¶ 111–12 (citing https://www.fiercewireless.com/tech/qualcomm-acquires-arteris-noc-tech-assets-team). The Arteris webpage does not disclose any acquisition price, and in fact states: "The commercial terms of the transaction have not been disclosed." Ex. 14 (Bratic's cited Arteris webpage), at 1.

Even putting aside the inherent unreliability of a rumor-based analysis, Bratic does not explain how the sum *Qualcomm* was rumored to have paid in 2013 to "purchase 'certain technology assets' from Arteris . . . and hire[] 43 Arteris engineers" (Bratic Rpt., ¶ 65) could have any bearing on the scope of legal rights *TI* acquired *six years earlier* in an unrelated licensing transaction documented in a *written agreement*. *See id.*, ¶¶ 111–12. The scope of TI's license with Arteris can and should be ascertained by reading the agreement itself, which TI produced to NST. This is an independent reason to exclude his opinions. *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (opinion "not based on 'good grounds'" when an expert "failed to provide a 'relevant' link [of cited data] with the facts at issue").

### C.    Bratic's Legal Opinions Regarding The Arteris-TI License Must Be Stricken.

Bratic opines that the Arteris-TI License "did not explicitly involve the licensing of patents" and is therefore "not relevant" to the hypothetical negotiation in this case. Bratic Rpt, ¶¶ 111–12. Bratic blatantly misreads the contract; he reproduces a section that prevents *TI* from ███████████████████████████████████████████ to conclude, contrary to the actual text of the agreement, that it "did not explicitly involve the licensing of patents" owned by Arteris. *Id.* Bratic inexplicably disregards § 1.19, which ████████████████████████████ ████████████████████████████████████████████ and § 1.20, which ████████ ████████████████████████████████████████████ Ex. 15 (Arteris-TI License).

9

Bratic also opines that the Arteris-TI License is irrelevant because "Arteris did not obtain patent license rights from either Phillips or NST and [so] would not have been able to provide such patent rights to TI." Bratic Rpt., ¶ 111. This opinion is immaterial, illogical, and legally erroneous. It assumes, incorrectly, that any license *other than one conveying rights under the asserted patents* is irrelevant. But "the Federal Circuit has instructed that testimony regarding the technological comparability of patents from a past license agreement and the patent in suit is reliable even where those licenses did not 'relate to the actual patents-in-suit' but instead 'were drawn to related technology.'" *WhereverTV, Inc. v. Comcast Cable Commc'ns, LLC*, No. 2:18-CV-529-JLB-NPM, 2022 WL 2751752, at \*5 (M.D. Fla. July 14, 2022) (quoting *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014)). Bratic does not argue that the Arteris-TI License concerns irrelevant technology—nor could he, considering that Arteris's licensed interconnects *are the accused technology* in this case. Therefore, paragraphs 111–12 of Bratic's report must be stricken.

### D.    Bratic's Reasonable Royalty Opinions Must Be Stricken.

Bratic derives a royalty rate of ███████████████████████████████████" (Bratic Rpt, ¶ 9) based on de la Iglesia's view that "███████████████████████████████████ ███████████████████████████" *Id.*, ¶ 150.[3] De la Iglesia did not estimate any *per-patent* benefit; instead, these numbers reflect TI's purported benefit from practicing *all* of the asserted patents *collectively*. Ex. 16 (Iglesia Tr.), 213:12–25. In fact, according to de la Iglesia, "failing to address any one or two [patents] . . . can potentially lead to the inability to realize" the patents' alleged benefits. *Id*. Bratic applies his conglomerated royalty rate across all of TI's worldwide sales. Bratic Rpt., ¶ 79. But this opinion is inadmissible as it impermissibly compensates NST for non-infringing activities. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir.

---

[3] Per Bratic, TI ███████████████████████████████████. (Bratic Rpt., ¶ 153.)

2015) (a "reasonable royalty cannot include activities that do not constitute patent infringement.").

*First*, Bratic improperly calculates royalties for method claims based on sales. NST has asserted only method claims for *four of its five asserted patents*. "As a matter of law, a method claim is not directly infringed by the mere sale of an apparatus capable of performing the claimed process." *Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG, 2020 WL 5815950, at *2 (E.D. Tex. Sept. 30, 2020) (citation omitted). Instead, "[m]ethod claims are only infringed when the claimed process is performed." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006). Thus, NST "can only receive infringement damages on those devices that *actually performed* the patented method during the relevant infringement period." *Cardiac*, 576 F.3d at 1359 (emphasis added). Bratic makes no attempt to measure the use of any claimed method; he simply applies a royalty for use of all asserted claims (mostly methods) to *sales*. *See* Bratic Rpt., ¶ 79; *cf. Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1314–15 (Fed. Cir. 2020) ("[one] cannot simply count sales of the [accused product] as sales of the method claimed in the [asserted] patents."). Exclusion is warranted on this ground alone. *See, e.g., Infernal Tech. LLC v. Activision Blizzard Inc.*, No. 3:18-CV-01397-M, 2021 WL 4391250, at *12 (N.D. Tex. Sept. 16, 2021) (excluding damages opinion because "[i]nstead of determining how many sales of the accused games were based on use of the method, [damages expert] seemingly assumes that all sales of the accused games are attributable to . . . performing the claimed method.").

Salvaging Bratic's opinions is impossible. For example, for the pre-suit period, although NST's indirect infringement claims stand dismissed (Dkt. 95), Bratic fails to limit his opinions to any alleged use *by TI* of the claimed methods (*i.e.*, *direct* infringement).[4] *See Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG, 2020 WL 5815950, at *3 (E.D. Tex. Sept. 30, 2020)

_____

[4] No NST expert alleges performance by TI (or anybody else) of any claimed steps in the U.S. Thus, TI intends to seek summary judgment of no infringement of the asserted method claims.

11

("Given that the Court has granted partial summary judgment of no pre-suit induced infringement, any surviving damages from the period prior to the filing of the complaint must have resulted from direct infringement. Without being able to delineate which of [the expert's] pre-suit damages opinions apply to direct infringement as opposed to indirect infringement . . . the Court must exclude [the expert's] pre-suit damages opinions."). Likewise, Bratic's post-suit royalties are untethered to actual use by TI (or anybody else) of any claimed methods in the United States. "At all times, the damages inquiry must concentrate on the compensation for the economic harm caused by infringement of the claimed invention," *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010), but Bratic makes no attempt to limit his proposed royalties to any alleged performance in the United States of any claimed methods. *See, e.g.,* Bratic Rpt., ¶ 79.

*Second*, Bratic's royalty base is also overinclusive. He counts TI's sales to Philips, who owned the asserted patents pre-suit and ███████████████████████████. Ex. 17, 1, 6 (Philips sold patents to NST in 2022, and ████████████████████████ ████████████████████████████████). Philips cannot infringe its own patents, and NST has not shown how TI could have direct or indirect liability for these sales. *See, e.g.*, *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031–32 ("The proprietary rights granted by any patent are the rights to exclude *others* from making, using or selling the invention in *1032 the United States.") (Fed. Cir. 1995) (emphasis added). Similarly, Bratic counts TI's sales to licensed customer, Hitachi.[5] *See* Bratic Rpt., ¶ 79. "The royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement," *AstraZeneca,* 782 F.3d at 1343 (citation omitted), and thus, for this reason too, Bratic's royalty base must be stricken.

---

[5] TI intends to seek summary judgment of no infringement in relation to its authorized sales.

12

**E.    Bratic's Royalty Rate Violates Apportionment Law And Must Be Stricken.**

Bratic adopts NST's technical expert's opinion that the asserted patents ████████ ████ ██████ per device, and then relies on that purported benefit to calculate a royalty rate. Bratic Rpt., ¶¶ 150–153. As TI's forthcoming motion to strike portions of the Iglesia Report will show, de la Iglesia's opinion violates apportionment law because it fails to exclude value attributable to unpatented features. Bratic's analysis relying on that improper opinion should be stricken for the same reasons. *See, e.g.*, *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) ("[T]o be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features") (cleaned up).

**F.    Unwarranted References To TI's Total Revenues Must Be Stricken.**

NST does not assert the EMVR, and yet NST's experts effectively invoke EMVR by referring to TI's total revenues from sales of its accused System-on-Chip ("SoC") devices. NST's asserted patents enable an admittedly narrow feature: "the efficient and scalable application of QoS [*i.e.*, Quality-of-Service] within a multi-hop interconnect." Bratic Rpt., ¶ 28. TI disputes this claim, but even accepting it as true, NST neither alleges nor proves that QoS constitutes the basis for consumer demand for TI's complex, multi-featured SoCs. *See Lucent Techs. Inc. v. Gateway Inc.*, 580 F.3d 1301, 1336-37 (Fed. Cir. 2009) (EMVR is "quite clear" and is satisfied only when "the patent-related feature is *the 'basis* for customer demand.'") (citations omitted; emphasis added). Even Dr. Kees Goossens, the sole inventor who testified in discovery, admitted that SoCs are complex devices comprising many valuable features: "***SoC design does not equal NoC design***. You need process[ors], you need [] advanced memories. ***You need all kinds of stuff***. And all of those components are complex . . . and there are advanced designers and designs dealing with each of those components[.]" Ex. 18 (Goossens Tr.), 218:21–19:9 (emphases added). Here, aspects of

13

TI's SoCs *unrelated to interconnect technology—e.g.*, the GPU and CPU—irrefutably drive consumer interest. *See, e.g.*, Ex. 19 (Expert Report on Damages of Michele M. Riley), § XVII.K.

Bratic himself concedes that apportionment is necessary "when the asserted patents are not the only driver of consumer demand," Bratic Rpt., ¶ 179, claiming to have "considered only the intrinsic technological and economic benefits associated with the Patents-in-Suit." *Id.* Nonetheless, presumably for shock value, each of NST's experts reference either TI's alleged total revenue of ████████ from sale of accused products (*Id.*, ¶¶ 138–142, 175, 186; Ex. 20 (Declaration of Dr. Erik Chmelar ("Chmelar Reb. Rpt.")), ¶¶ 395–96), or TI's alleged 2010 company-wide revenue of ██████ (Iglesia Op. Rpt., ¶ 634).

Bratic's references to TI's alleged █████-dollar total revenues must be stricken. Since EMVR does not apply, referencing total revenues is improper as total revenues "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). Disclosure "only serves to make a patentee's proffered damages amount appear modest by comparison," thus risking that the jury may artificially inflate their damages calculation "beyond that which is adequate to compensate for the infringement." *Power Integrations, Inc.*, 904 F.3d at 977 (cleaned up); *Eidos Display, LLC v. AU Optronics Corporation et al.*, No. 6:11-CV-00201-JRG, 2017 WL 1322555, at *3 (E.D. Tex. Mar. 29, 2017) (disclosure "would only work to improperly inflate damages for the jury.") (citation omitted). Disclosure is particularly unnecessary here as Bratic calculates royalties based on unit sales (*not* revenues). Bratic Rpt., ¶ 10.

The same result should follow for NST's other experts. Mr. de la Iglesia violates EMVR to draw unwarranted inferences regarding non-infringing alternatives. Iglesia Op. Rpt., ¶ 634. Specifically, he opines that TI's internally developed CBA was "not compatible" and hence not a

14

suitable alternative (*id.*, ¶ 632–33), but then proceeds to speculate that the cost of making CBA compatible "would have been substantial" because a company of TI's size ("over ▉▉▉▉ in revenue in 2010") opted to use the accused Arteris technology instead. *Id*. This reference to TI's company-wide revenues is gratuitous, and indeed, de la Iglesia shows no correlation between those revenues and a TI business unit's choice to license technology. *Id*. In any event, de la Iglesia's non-specific estimation of TI's cost to implement a non-infringing alternative—"substantial"—is of no use to the jury and should be stricken. *See* Fed. R. Evid. 702 (expert testimony only admissible if proponent demonstrates it will "help the trier of fact.").

Finally, Dr. Chmelar cites TI's total revenues as alleged objective indicia of non-obviousness. Chmelar Reb. Rpt., ¶¶ 395–96. But "[a] nexus must be established between the merits of the claimed invention and the evidence of commercial success before that issue becomes relevant to the issue of obviousness." *Vandenberg v. Dairy Equip. Co., a Div. of DEC Int'l*, 740 F.2d 1560, 1567 (Fed. Cir. 1984); *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1336 (Fed. Cir. 2014) (patentee bears "burden of production to demonstrate a nexus between the claimed design and the secondary considerations."). Dr. Chmelar makes no attempt to establish any such nexus, and hence his disclosure of TI's total revenues is irrelevant and inadmissible. *See Bmc Software, Inc. v. Servicenow, Inc.*, 2016 WL 379620, *3 (E.D. Tex. 2016) (ordering plaintiff "to structure its damages presentation in such a way that the jury will not be able to calculate [defendant's] total revenues, in accordance with the evidentiary rule set forth in *Ericsson*.) (citing *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)).

## III.   CONCLUSION

TI respectfully moves to exclude the opinions of NST's experts discussed above.

Dated: April 26, 2024

/s/ Udit Sood
Robert T. Haslam (lead counsel)
rhaslam@cov.com
Anupam Sharma
asharma@cov.com
Hyun S. Byun
hbyun@cov.com,
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Ranganath Sudarshan
rsudarshan@cov.com
Tarek Austin
taustin@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5346
Facsimile: (202) 778-5346

Udit Sood
usood@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Ste 5400
San Francisco, CA 94111
Telephone: 415-591-6000
Facsimile: 415-591-6091

Amanda Abraham
aa@rothfirm.com
The Roth Law Firm
115 N. Wellington, Suite 200
P O Box 876
Marshall, TX 75671-0876
Telephone: 903-935-1665
Facsimile: 903-935-1797

Wesley Hill
wh@wsfirm.com
Ward, Smith & Hill, PLLC

16

1507 Bill Owens Parkway
Longview, TX 75604
Telephone: 903-757-6400
Facsimile: 903-757-2323

*Attorneys for Defendant*
*Texas Instruments Incorporated*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail and notice via the Court's CM/ECF system per Local Rule CV-5(a)(3) this April 26, 2024.

/s/ Udit Sood
Udit Sood

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certify that TI complied with the meet and confer requirement in Local Rule CV-7(h) prior to filing this opposed motion. The parties met and conferred telephonically on April 26, 2024 which resulted in an impasse leaving this motion opposed.

/s/ Udit Sood
Udit Sood

18