**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC,<br><br>　　　Plaintiff,<br><br><br>　　　v.<br><br><br>TEXAS INSTRUMENTS INCORPORATED,<br><br><br>　　　Defendant. | Civil Action No. 2:22-cv-482-RWS<br><br>JURY TRIAL DEMANDED |

**TEXAS INSTRUMENTS INCORPORATED'S MOTION FOR
SUMMARY JUDGMENT ON CERTAIN LIABILITY AND REMEDY ISSUES**

████████████

## TABLE OF CONTENTS

I.     STATEMENT OF THE ISSUES TO BE DECIDED............................................................ 1

II.    STATEMENT OF UNDISPUTED MATERIAL FACTS .................................................. 1

    A.    Facts Relevant to NST's Claims of Willful and Indirect Infringement .................. 1

    B.    Facts Relevant to NST's Asserted Method Claims.................................................. 3

    C.    Facts Relevant to NST's Failure to Mark or Provide Pre-Suit Notice of TI's Alleged Infringement ....................................................................................... 4

    D.    Facts Relevant to TI's Implied License Through Equitable Estoppel .................... 7

    E.    Facts Relevant to NST's Claims Based on Authorized Sales................................. 8

    F.    Facts Relevant to Unavailability of Injunctive Relief............................................ 9

III.    ARGUMENT................................................................................................................. 10

    A.    TI Is Entitled to Summary Judgment of No Willful or Indirect Infringement.............................................................................................................. 10

        1.    Willful and Indirect Infringement Require Culpable States of Mind............................................................................................................. 10

        2.    There Is No Evidence That TI Has Had the Required States of Mind............................................................................................................. 11

    B.    TI Is Entitled to Summary Judgment of No Infringement of Method Patents.................................................................................................................... 15

        1.    NST Cannot Prove That TI Directly Infringed Any Method Patent......... 16

        2.    NST Cannot Prove That TI Indirectly Infringed Any Method Patent............................................................................................................ 17

    C.    TI Is Entitled to Summary Judgment of No Pre-Suit Damages for the '818 Patent.................................................................................................................... 18

        1.    NST Did Not Provide Pre-Suit Actual Notice. ........................................ 19

        2.    NST Did Not Provide Pre-Suit Constructive Notice. ............................... 19

    D.    TI Is Entitled to Summary Judgment of No Infringement Because of TI's Implied License.......................................................................................................... 21

█████████████████████████████████

E.      TI Is Entitled to Summary Judgment of No Infringement by Authorized Sales ................................................................................................................. 23

F.      TI Is Entitled to Summary Judgment of No Injunctive Relief. ............................. 25

IV.     CONCLUSION .......................................................................................................... 25

████████████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012)..................................................................................26

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017)..............................................................................19, 20

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  950 F.3d 860 (Fed. Cir. 2020)..................................................................................19

*Armstrong Pump, Inc. v. Hartman*,
  No. 10-cv-446S, 2016 WL 7208753 (W.D.N.Y. Dec. 13, 2016) .............................22

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
  216 F.3d 1042 (Fed. Cir. 2000)..............................................................................18, 24

*Barnes & Noble, Inc. v. LSI Corp.*,
  849 F. Supp. 2d 925 (N.D. Cal. 2012) ....................................................................23

*BASF Plant Science, LP v. Commonwealth Sci. and Indus. Rsch. Org.*,
  28 F.4th 1247 (Fed. Cir. 2022) ................................................................................11

*Bayer Healthcare LLC v. Baxalta Inc.*,
  989 F.3d 964 (Fed. Cir. 2021)..................................................................................11

*Beckman Inst., Inc. v. Cincom Sys., Inc.*,
  232 F.3d 893 (9th Cir. 2000) ...................................................................................21

*Bio-Rad Labs., Inc. v. ITC*,
  998 F.3d 1320 (Fed. Cir. 2021)................................................................................12

*Bright Data Ltd. v. Teso LT, UAB*,
  584 F. Supp. 3d 193 (E.D. Tex. 2022).....................................................................25, 26

*Carnegie Mellon Univ. v. LSI Corp.*,
  No. 18-CV-04571-JD, 2020 WL 5592990 (N.D. Cal. Sept. 18, 2020) ...................25

*Celanese Int'l Corp. v. Oxyde Chemicals, Inc.*,
  554 F. Supp. 2d 725 (S.D. Tex. 2008) .....................................................................19

*Cirba Inc. v. VMWare, Inc.*,
  No. 19-742-GBW, 2023 WL 3151852 (D. Del. Apr. 18, 2023)...............................12

*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015)........................................................................................................11

*Contour Design, Inc. v. Chance Mold Steel Co.*,
  794 F. Supp. 2d 315 (D.N.H. 2011)................................................................................22

*Crayton v. Amadeo Rossi, S.A.*,
  384 F. App'x 330 (5th Cir. 2010) ...................................................................................16

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)........................................................................................................25

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
  909 F.3d 398 (Fed. Cir. 2018).........................................................................................14

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
  No. 2:22-cv-00125-JRG, 2023 WL 8281905 (E.D. Tex. Nov. 29, 2023) ..............................16

*ePlus, Inc. v. Lawson Software, Inc.*,
  700 F.3d 509 (Fed. Cir. 2012).........................................................................................17

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010).......................................................................................18

*FireBlok IP Holdings, LLC v. Hilti, Inc.*,
  No. 219CV00023RWSRSP, 2020 WL 948022 (E.D. Tex. Feb. 27, 2020),
  *aff'd*, 855 F. App'x 735 (Fed. Cir. 2021) ...................................................................25

*Fleet Engineers, Inc. v. Mudguard Techs., LLC*,
  2023 WL 5219773 (Fed. Cir. Aug. 15, 2023)..................................................................11

*Goodman v. Hewlett-Packard Co.*,
  393 F.Supp.3d 580 (S.D. Tex. Aug. 16, 2018) ...............................................................21

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016)..........................................................................................................11

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  831 F.3d 1369 (Fed. Cir. 2016).......................................................................................25

*High Point Sarl v. Sprint Nextel Corp.*,
  67 F. Supp. 3d 1294 (D. Kan. 2014), *aff'd in part*, 817 F.3d 1325 (Fed. Cir. 2016) ....................................................................................................................................23

*High Point SARL v. Sprint Nextel Corp.*,
  817 F.3d 1325 (Fed. Cir. 2016).......................................................................................22

███████████████████

*Hon Hai Precision Indus. Co. v. Asia Vital Components Co.*,
  No. CV 03-0093-SVW(MCX), 2004 WL 5806997 (C.D. Cal. Feb. 12, 2004)...........22, 23, 24

*Houston v. Texas Dep't. of Ag.*,
  17 F. 4th 576 (5th Cir. 2021) ................................................................................12

*Intell. Ventures I LLC v. Symantec Corp.*,
  234 F. Supp. 3d 601 (D. Del. 2017)......................................................................14

*Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*,
  No. 2:17-cv-00662-JRG-RSP, 2019 WL 2959568 (E.D. Tex. Apr. 18, 2019).......................19

*Interwoven, Inc. v. Vertical Computer Sys.*,
  No. CV 10-04645 RS, 2013 WL 3786633 (N.D. Cal. July 18, 2013)....................................18

*INVT SPE LLC v. Int'l Trade Comm'n*,
  46 F.4th 1361 (Fed. Cir. 2022) ..............................................................................16

*ION, Inc. v. Sercel, Inc.*,
  2010 WL 3768086 (E.D. Tex. Sept. 16, 2010), *aff'd sub nom.*, 464 F. App'x
  901 (Fed. Cir. 2012)...............................................................................................16

*Jansen v. Rexall Sundown, Inc.*,
  342 F.3d 1329 (Fed. Cir. 2003)..............................................................................18

*Joy Techs., Inc. v. Flakt, Inc.*,
  6 F.3d 770 (Fed. Cir. 1993).....................................................................................17

*Mirror Worlds, LLC v. Apple, Inc.*,
  784 F.Supp.2d 703 (E.D.Tex., 2011).....................................................................17

*Network Sys. Techs., LLC v. Samsung Elecs. Co., Ltd.*,
  No. 2:22-cv-00481 (E.D. Tex.), Dkt. 1................................................................5, 6

*NexStep, Inc. v. Comcast Cable Comm'cns, LLC*,
  2021 WL 4077778 ...........................................................................................13, 14

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
  52 F.3d 1026 (Fed. Cir. 1995)................................................................................24

*Radware, Ltd. v. F5 Networks, Inc.*,
  2016 WL 4427490 (N.D. Cal. Aug. 22, 2016) ....................................................12

*Reitz v. Woods*,
  85 F.4th 780 (5th Cir. 2023) ............................................................................16, 17

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
  853 F.3d 1370 (Fed. Cir. 2017)..............................................................................20

v

*Roche Diagnostics Corp. v. Meso Scale Diagnostics,*
  LLC, 30 F.4th 1109 (Fed. Cir. 2022) ........................................................................11

*RSR Corp. v. Int'l Ins. Co.,*
  612 F.3d 851 (5th Cir. 2010) ...................................................................................15

*Scholle Corp. v. Blackhawk Molding Co.,*
  133 F.3d 1469 (Fed. Cir. 1998)................................................................................23

*Team Worldwide Corp. v. Academy, Ltd.,*
  No. 2:19-cv-00092-JRG-RSP, 2021 WL 1897620 (E.D. Tex. May 3, 2021) .........................19

**Statutes**

35 U.S.C. § 286.....................................................................................................17

35 U.S.C. § 287.......................................................................................................8

35 U.S.C. § 287(a) ...................................................................................1, 7, 19, 20

TI respectfully moves for summary judgment on the following liability and remedy issues.

## I.   STATEMENT OF THE ISSUES TO BE DECIDED

1.    Whether NST's post-suit willful infringement and indirect infringement claims fail as a matter of law because there is no evidence that TI had the requisite culpable mental states.

2.    Whether NST's claims relating to U.S. Patent Nos. 7,373,449, 7,594,052, 7,769,893, and 8,072,893 (collectively, the asserted "Method Patents") fail as a matter of law because there is no evidence that anyone performed any claimed method in the United States.

3.    Whether NST is barred from recovering pre-suit damages for TI's alleged infringement of U.S. Patent No. 7,366,818 (the "'818 patent") for failure to provide pre-suit notice under 35 U.S.C. § 287(a).

4.    Whether TI holds an implied license through equitable estoppel.

5.    Whether TI is entitled to summary judgment of no infringement in relation to certain authorized sales of accused products.

6.    Whether NST's request for a permanent injunction must be denied because there is no risk of irreparable injury to NST.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    Facts Relevant to NST's Claims of Willful and Indirect Infringement

1.    NST asserts against TI claims of willful and indirect (induced and contributory) infringement of all asserted patents. Dkt. 106, ¶¶ 1, 100, 102; Dkt. 152.

2.    TI had no pre-suit knowledge of the asserted patents. *See, e.g.*, Ex. 1 (Cimino Tr.), 168:20–24 ("Q. . . . So it's your testimony that TI was not aware of the patents-in-suit prior to receiving the complaint . . . ; is that correct? A. Correct.").[1]

---

[1] Exhibits cited herein refer to the exhibits attached to the Declaration of Udit Sood in Support of TI's Motion For Summary Judgment on Certain Liability and Remedy Issues ("Sood Decl.").

1

3. The Court dismissed NST's pre-suit willful and indirect infringement claims for failure to adequately plead TI's pre-suit knowledge of the asserted patents. *See* Dkt. 95, 3, 5–9.

4. The Court denied NST's motion for leave to plead that TI was willfully blind to the asserted patents. Dkt. 179, 8–10.

5. NST did not seek a preliminary injunction against TI.

6. TI has asserted and continues to pursue affirmative defenses of noninfringement and invalidity and counterclaims of invalidity for all asserted patents. *See, e.g.*, Dkt. 113, 99–103; Ex. 2 (TI's Resp. to NST's Interrogatory Nos. 3, 13), 23–38, 72–74; Ex. 3 (Expert Report of Robert P. Colwell, Ph.D., Regarding Noninfringement, dated Mar. 5, 2023 ("Colwell Reb. Rpt.")), ¶¶ 44–421; Ex. 4 (Expert Report of Dr. Mitchell Aaron Thornton on Invalidity, dated Feb. 13, 2023 ("Thornton Rpt.")), ¶¶ 79–672.

7. NST did not question TI's 30(b)(6) corporate designees about their views on whether TI has infringed or induced or contributed to infringement of any asserted patent. Nor did NST question any TI representative regarding the bases underlying TI's positions of no direct, willful, or indirect infringement set forth in TI's pleadings and interrogatory responses.

8. NST and its expert on infringement have not identified any specific fact indicating that TI (i) had a specific intent to infringe or otherwise deliberately or intentionally infringed any asserted patent; (ii) knowingly induced another's infringement of any asserted patent and had a specific intent to encourage such infringement; or (iii) had knowledge of another's infringement of any asserted patent.

9. NST and its expert on validity have not identified any specific fact indicating that TI copied any asserted patent. *See* Ex. 5 (Chmelar Tr.), 62:19–20 ("I didn't in my report make any allegations of copying, that I know of.").

2

**B.      Facts Relevant to NST's Asserted Method Claims**

10.      TI sells integrated circuits ("ICs"). *See, e.g.*, Dkt. 1 (Complaint), ¶¶ 92, 95 ("TI provides SoCs," which "are complex integrated circuits that may incorporate multiple processors, memory units, and interfaces onto a single chip.").

11.      The only asserted claim of U.S. 8,072,893 ("'2,893 patent") is Claim 10, which recites a "method of designing an integrated circuit." Ex. 6 (Expert Report of Erik de la Iglesia, dated Feb. 13, 2023 ("Iglesia Op. Rpt.")), ¶¶ 36, 568, 578.

12.      None of TI's accused products were made in the United States. *See, e.g.*, Ex. 6 (Iglesia Op. Rpt.), Ex. C ("Chip Package Assembly Location" and "Wafer Fabrication Location" for accused products are all foreign countries); Ex. 7 (TI's 5th Suppl. Resp. to NST's Interrogatory No. 4), 40–50 (wafers for accused products "are cut, assembled, tested and packaged overseas," and the accused products "are then shipped to TI customers from overseas.").

13.      The accused functionality in the accused products—namely, the Arteris "NoC" interconnects—was designed outside the United States. *See* Ex. 6 (Iglesia Op. Rpt.), ¶ 89 (accusing "Arteris NoCs, which [allegedly] embody the infringing elements of the Asserted Patents."); Ex. 8 (Iglesia Reb. Rpt.), ¶ 69 (accused products designed in France); Ex. 9 (Castille Tr.), 138:16–141:20; Ex. 7 (TI's 5th Suppl. Resp. to NST's Interrogatory No. 4), 40–41 ("NoC in each accused TI NoC IC was generated and verified overseas"; no NoC generated in the United States.").

14.      The accused TI products were designed, developed, and released to market before the initiation of this case. *See, e.g.*, Ex. 8 (Iglesia Reb. Rpt.), ¶ 5 (accused products developed "between at least 2007 and 2012"); Ex. 10 (Expert Report on Damages of Michele M. Riley, dated Mar. 6, 2024 ("Riley Rpt.")), Ex. 6.1.2 (revenues of each accused niche predate this case).

15.      NST has identified no evidence that TI induced any third party to design any IC, before or after the filing of this lawsuit. Instead, NST argues that ***TI's own*** ICs infringe. *See* Ex. 6

3



(Iglesia Op. Rpt.), ¶ 123 (alleging infringement based on TI's sale of the "***Accused Products*** which meet each and every limitation of [the asserted patents].") (emphasis added).

16.     NST has identified no evidence that TI designed, used or tested any accused products on or after Dec. 19, 2016 (*i.e.*, six years prior to NST's filing of this lawsuit).

17.     NST's expert on infringement has identified no specific facts indicating that TI used (*e.g.*, through testing) any of the accused products within the United States.

18.     NST has identified no evidence that anyone—TI itself, any direct TI customer or end-customer, or any TI supplier—at any time performed any claimed steps in the United States.

**C.      Facts Relevant to NST's Failure to Mark or Provide Pre-Suit Notice of TI's Alleged Infringement**

19.     The '818 patent issued on Apr. 29, 2008, and was originally assigned to Koninklijke Philips Electronics N.V. ("Philips"). Dkt. 1, Ex. 1 ('818 patent), 1.

20.     All claims of the '818 patent are apparatus claims. *Id.*, 12:5–44.

21.     Philips assigned the '818 patent to NST, along with all other asserted patents, on Jun. 24, 2022. Ex. 11(Patent Purchase Agreement), §§ 2.25, 2.29, and 4.1, and Ex. A.

22.     Philips entered into a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23.     Under the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 12, § 2.5.

24.     The ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████  Ex. 12, § 1.

25.    On Dec. 19, 2022, NST filed a complaint against Samsung alleging infringement of the '818 patent. *Network Sys. Techs., LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-00481 (E.D. Tex.), Dkt. 1 ("NST's Complaint Against Samsung").

26.    NST asserts that Samsung's "Galaxy S series phones"—including the Samsung Galaxy S10 series phones—practice claims 1–3 and 5–7 of the '818 patent. *See* Ex. 13 (NST's P.R. 3-1 and 3-2 Disclosures in Case No. 2:22-cv-00481), § 1.A. ("Samsung infringes at least the following Asserted Patents and Claims: U.S. Patent No. 7,366,818 . . . claims 1-3, and 5-7"); *id.*, Appendix A1 (listing as "Accused Samsung Instrumentalities" "Samsung Galaxy S-Series smartphones, including without limitation: . . . Samsung Galaxy S10 5G[,] Samsung Galaxy S10[,] Samsung Galaxy S10+[,] Samsung Galaxy S10e"); Ex. 14 (NST's Response to TI's RFA No. 1), 9 ("NST admits that it alleges the 'Galaxy S series phones'" infringe U.S. Patent No. 7,366,818); NST's Complaint Against Samsung, ¶¶ 21, 152–60 (alleging infringement).

27.    The Samsung Galaxy S10 series phones accused by NST of infringing the '818 patent contain the same accused functionality as TI's accused products in this case: "Arteris interconnect technology." *See, e.g.*, NST's Complaint Against Samsung, ¶¶ 148 & n.33, 152, 154.

28.    Samsung represents that ███████████████████████████████ ██████████████████████████  Ex. 15 (Samsung's Sealed First Amended Answer and Counterclaims, *Network Sys. Techs., LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-00481 (E.D. Tex.), Dkt. 94), 45 ██████████████████████████████████████████).

████████████████████████████████████████

29.     Given that the ████████████████ ████████████████, the Philips-NST Patent Purchase Agreement specifies that NST's acquisition of Philips' patents (including the '818 patent) was ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████.

30.     The ████████████████ (Ex. 12) ████████████████████████

████████████████████████████████.

31.     Starting in Mar. 2019, Samsung offered Samsung Galaxy S10 series phones for sale online and in stores in the United States. *See, e.g.*, Ex. 16 (Samsung Newsroom, "*Samsung Electronics Officially Launches Galaxy S10 in Global Markets*" (Mar. 8, 2019)), 1 ("Samsung Electronics has officially launched the Galaxy S10, Galaxy S10 + and Galaxy S10e, [which] . . . will be available in stores and online today, Mar. 8, in approximately 70 countries, including the U.S."); Ex. 17 (GSM Arena), 1 (confirming release and availability date of Mar. 8, 2019, for Samsung Galaxy S10 Model SM-G973U (USA)); Ex. 18 (Abraham Decl.), ¶¶ 3–5.

32.     Between Nov. 2018 and Dec. 2022, Samsung sold more than ████████ Samsung Galaxy S10 series phones in the United States. *See* Ex. 19 (Diaz Decl.), Ex. A; Sood Decl., ¶ 20.

33.     On Dec. 29, 2023, TI notified NST that "[Samsung] Galaxy S10 series phones NST accuses of infringement, including model numbers SM-G970U, SM-G973U, SM-G975U, and SM-G977U, were sold in the United States and were not marked in any manner with . . . U.S. Patent No. 7,366,818." Ex. 20 (TI Ltr. dated Dec. 29, 2023), 1.

████████████████████████████████████████████████████

34.    On Dec. 29, 2023, TI produced to NST for inspection an exemplary new Samsung Galaxy S10 series phone (model number G973U1) that was purchased online by TI counsel in the United States and that was not marked with the '818 patent number. Ex. 20, TI_HARDWARE_000004–09; Ex. 18 (Abraham Decl.), ¶ 3.

35.    TI raised during fact discovery the issue that NST's damages claim for TI's alleged infringement of the '818 patent should be limited due to failure to comply with § 287(a)'s marking requirements. *See* Ex. 21 (TI's Resp. and Supp. Responses to Rog. No. 10), 64–68.

36.    There is no evidence in the record that any Samsung Galaxy S10 series phone has been marked with the '818 patent number. *See, e.g.*, Ex. 33 (NST's Resp. to TI's RFA No. 2), 11 ("NST admits that it is unaware of whether the 'Samsung Galaxy S10 Products' have been marked with U.S. Patent No. 7,366,818 but denies that there is any need for such products to be marked under 35 U.S.C. § 287[.]").

37.    NST does not contend (or identify any evidence) that NST or its predecessor-in-interest Philips ███████████████████████████████████████████████████ ████████████████████████████████████████████.

38.    NST alleges that TI has infringed claims 1–3 and 5–7 of the '818 patent. Dkt. 152.

39.    Neither NST nor its predecessor-in-interest Philips communicated to TI any charge of infringement of the '818 patent by any TI product at any time before the initiation of this lawsuit on Dec. 19, 2022. *See, e.g.*, Dkt. 95, 3; Ex. 22 (Hurwitz Tr.), 57:11–58:11.

**D.    Facts Relevant to TI's Implied License Through Equitable Estoppel**

40.    Philips started purchasing TI accused products on Feb. 23, 2017. Sood Decl., ¶ 36.

41.    Since 2017, Philips has bought substantial volumes of accused TI products for incorporation into Philips' products. *See* Ex. 10 (Riley Rpt.), ¶ 291 ("From 2017 through Oct. 2023, TI sold ██████████ units of TI chips containing an accused Arteris NoC to Philips.").

██████████████████████████████

42.     Philips never communicated to TI a charge of infringement of any asserted patent. *See, e.g.*, Ex. 1 (Cimino Tr.), 30:18–31:12.

43.     In Jan. 2022, Philips provided NST claim charts that ████████████ ██████████████████████████████████████. *See, e.g.*, Ex. 30, 4 (████████████████████████████████████████████ ████████████████████████████████████████████); Ex 26 (Loureiro Tr.), 70:3–15 (Philips' data room contained claim charts); Ex. 26A (email re: "Philips Data Room Access," dated Jan. 24, 2022).

44.     After Jan. 2022, Philips continued to buy TI's accused products, including more than ████ units in 2022, and more than ████ units in 2023. Ex. 10 (Riley Rpt.), ¶ 291.

45.     TI has stopped developing products that use Arteris interconnect technology. *See* Ex. 10 (Riley Rpt.), ¶ 106 ("TI's newer products, such as the AM273 and AM275, use CBA instead of an Arteris NoC), ¶ 120 ("While versions of [older] products continue to use Arteris interconnects, . . . TI has not expanded its use of Arteris interconnects to other product lines and ceased developing new products using Arteris interconnects before this litigation ever began"); Ex. 9 (Castille Tr.), 78:4–14; Ex. 23 (Siddiki Tr.), 31:2–6.

46.     NST accuses TI's "ADAS Low 2.0," "J6 Plus," and "J6ECO 2.1" SoCs of infringement in this case. *See* Ex. 6 (Iglesia Op. Rpt.), ¶ 87 & Ex. C.

47.     TI first sold "ADAS Low 2.0," "J6 Plus," and "J6ECO 2.1" SoCs commercially in Aug. 2017, Oct. 2018, and Feb. 2020, respectively. Sood Decl., ¶ 37. Thus, each of these TI products launched after Philips began purchasing TI's accused products.

**E.      Facts Relevant to NST's Claims Based on Authorized Sales**

48.     NST's damages expert's royalty base counts all of TI's worldwide sales of accused products, without excluding sales to Philips or Hitachi. *See* Ex. 24 (Bratic Rpt.), Ex. 5 & ¶ 79. This

8

███████████████████████████████

includes ██████ units sold to Hitachi, of which ██████ were sold outside the United States. *See* Ex. 10 (Riley Rpt.), Ex. 3.2–3.3.

49.     Even after selling the asserted patents to NST, Philips ████████████

████████████████████████████████████

████████████████████████. Ex. 11 (Patent Purchase Agreement), § 4.4.

50.     On Jan. 1, 1999, Philips ████████████████████████

████████████████████████████████████

████████████████████████, § 2.1(a)(iii).

51.     On Nov. 1, 2009, Philips and Hitachi ████████████████

████████████████████████████████████

██████ § 4.1; *see also* Ex. 25B (Philips declaration authenticating Ex. 25 and Ex. 25A).

52.     NST's infringement expert articulates no theory under which TI's sales to Philips or Hitachi, within or outside the United States, could lead to direct or indirect liability for TI.

**F.      Facts Relevant to Unavailability of Injunctive Relief**

53.     "NST doesn't sell any products." Ex. 22 (Hurwitz Tr.), 93:19–94:1.

54.     NST's business is "patent monetization and licensing." Ex. 26 (Loureiro Tr.), 15:4–11; Ex. 24 (Bratic Rpt.), ¶ 12.

55.     NST testified that, "if TI agreed to pay royalties for the alleged infringement," NST would not still seek an injunction, because NST's "objective is not to collect money from [TI] *and* prevent them from producing the product because if we were to settle this and get a license fee, they'd be licensed." Ex. 26 (Loureiro Tr.), 173:3–14 (emphasis added).

56.     NST's damages expert has opined that monetary damages in the form of a royalty would compensate NST for TI's alleged infringement. Ex. 24 (Bratic Rpt.), ¶ 10 ("I have

9

calculated the reasonable royalties owed to NST as a result of TI's alleged infringement of the Patents-in-Suit to be approximately ████████ as of the date of this report.").

## III.    ARGUMENT

### A.    TI Is Entitled to Summary Judgment of No Willful or Indirect Infringement.

The Court dismissed NST's pre-suit willful and indirect infringement claims for failure to adequately plead TI's pre-suit knowledge of the asserted patents, but let NST's corresponding post-suit claims proceed to discovery. *See* Dkt. 95. With discovery now closed, the Court should grant summary judgment on these post-suit claims because there is no record evidence that TI had the requisite mental states for post-suit willful or indirect infringement.

### 1.    Willful and Indirect Infringement Require Culpable States of Mind.

A culpable state of mind is an essential element of both willful and indirect infringement.

"To establish willfulness, the patentee must show the accused infringer had a *specific intent to infringe* at the time of the challenged conduct." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021) (emphasis added). "Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires *deliberate or intentional* infringement." *Id.*, 988 (emphasis added); *see also BASF Plant Science, LP v. Commonwealth Sci. and Indus. Rsch. Org.*, 28 F.4th 1247, 1274–75 (Fed. Cir. 2022) (same) (affirming decision not to submit willfulness to the jury). The "intent" element of willfulness "denotes [a] state of mind in which 'the actor desires to cause [the] consequences of his act' [*i.e.*, infringement] or 'believes' them to be 'substantially certain to result from it.'" *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016) (citation omitted).

Likewise, "[a] claim of induced infringement requires a showing not only of direct infringement, but further 'that the alleged infringer *knowingly* induced infringement and possessed *specific intent* to encourage another's infringement.'" *Fleet Engineers, Inc. v. Mudguard Techs.*,

10

*LLC*, 2023 WL 5219773 (Fed. Cir. Aug. 15, 2023), \*5 (quotation omitted) (emphasis added). "[T]he intent standard for inducement is akin to the one for willfulness, as both rest on subjective intent of the accused infringer." *Roche Diagnostics Corp. v. Meso Scale Diagnostics*, LLC, 30 F.4th 1109, 1117–18 (Fed. Cir. 2022) ("The same analysis that led the district court to grant JMOL on willfulness should have led to a JMOL on inducement").

Similarly, to establish contributory infringement, the patentee must show that the defendant had "knowledge of . . . infringement" of the patent in suit. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). In the contexts of induced and contributory infringement, "the mental state imposed in each instance is similar," thus "it is proper to find common ground in the two theories of liability." *Id.*, 640–41. The patentee must also show that "the accused product is not a staple article or commodity of commerce suitable for a substantial noninfringing use." *Bio-Rad Labs., Inc. v. ITC*, 998 F.3d 1320, 1335 (Fed. Cir. 2021).

### 2.    There Is No Evidence That TI Has Had the Required States of Mind.

There is no dispute that TI lacked pre-suit knowledge of the asserted patents, SUMF 24, and ever since NST filed its complaint, TI has both vigorously disputed NST's infringement allegations and raised robust challenges to the validity of NST's patents, SUMF 6. NST has not sought a preliminary injunction against TI. SUMF 5; *cf. Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 4427490, \*6 (N.D. Cal. Aug. 22, 2016) ("[S]ince [the plaintiff] did not seek a preliminary injunction, it is not entitled to a finding of willfulness based solely on [the defendant's] post-complaint infringement.").

Against this backdrop, to avoid summary judgment on its claims of post-suit willful and indirect infringement, NST bears the burden of identifying "***specific facts***" that could reasonably support findings that, since learning of the asserted patents and NST's infringement allegations, TI (1) has had a *specific intent* to infringe the patents (willful infringement); (2) has *knowingly*

11

induced a third party's infringement with *specific intent* to encourage such infringement (induced infringement); and (3) has *known* of a third party's infringement (contributory infringement). *Houston v. Texas Dep't. of Ag.*, 17 F. 4th 576, 581 (5th Cir. 2021) (emphasis added); *id.* at 582 ("Summary judgment cannot be defeated through '[c]onclusional allegations and denials, . . . unsubstantiated assertions, and legalistic argumentation.'") (quotation omitted).

As detailed below, the record is devoid of any such evidence and NST cannot avoid summary judgment. *See*, *e.g.*, *Cirba Inc. v. VMWare, Inc.*, No. 19-742-GBW, 2023 WL 3151852, *1–3 (D. Del. Apr. 18, 2023) (granting summary judgment of no post-suit willfulness); *NexStep, Inc. v. Comcast Cable Comm'cns, LLC*, 2021 WL 4077778, *13–14 (same).

a)      NST Did Not Seek Any Testimony Regarding TI's Mental State.

Even though TI's state of mind in relation to the asserted patents and NST's infringement allegations against it is an essential element of NST's willful and indirect infringement claims, NST elected not to question TI's 30(b)(6) corporate designees about TI's views on whether TI has infringed or induced or contributed to any third party's infringement of any asserted patent. SUMF 7. Nor did NST question any of these representatives regarding the bases underlying TI's positions of no direct, willful, and indirect infringement set forth in TI's pleadings, interrogatory responses, and expert reports. *Id.* There is no testimony in the record to support a finding that TI has at any point had a culpable mental state in respect to NST's asserted patents.

b)      NST Has Not Identified Any Specific Post-Suit Conduct Indicative of the Required Culpable Mental States.

TI served an interrogatory on NST seeking identification of "all facts and circumstances relevant to the contentions in [NST's] Complaint that TI's alleged infringement of the Asserted Patents has been and continues to be willful." Ex. 27 (TI Interrogatory No. 7), 77. In response, NST asserted that it "has detailed Texas Instruments' direct, indirect, and willful infringement of

12

████████████████████████████████████████████████

the Asserted Patents" through (1) its amended complaint and accompanying infringement claim charts; (2) certain categories of documents cited in the claim charts; and (3) expert testimony. Ex. 28 (NST Resp. & First Suppl. Resp. to TI's Interrogatory No. 7), 34–38.[2] NST's corporate designee later confirmed that NST has no supporting evidence beyond the "facts" purportedly identified in its interrogatory responses. *See* Ex. 26 (Loureiro Tr.), 168:8–11, 176:22–177:5. As shown below, NST failed to identify ***any specific facts*** to support a finding that TI has had a specific intent to infringe or induce infringement or has known of a third party's infringement.

*First*, NST referenced its amended complaint and accompanying infringement claim charts, which NST generically alleges "map Texas Instruments' Accused Products and conduct against an exemplary claim of each of the Six Asserted Patents." Ex. 28, 37. But these are merely direct infringement theories and arguments—not evidence that TI has had a specific intent to infringe or induce infringement. *See Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 408 (Fed. Cir. 2018) ("[M]ere knowledge of possible infringement is not enough [to infer specific intent]."). Without more, "a defendant's post-complaint offering of the accused products is insufficient to create a fact issue regarding post-suit willfulness" because "such activity by the accused infringer is standard procedure . . . in patent cases." *NexStep, Inc. v. Comcast Cable Comm'cns, LLC*, 2021 WL 4077778, *13–14 (D. Del. Aug. 20, 2021); *see also, e.g.*, *Intell. Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 612 (D. Del. 2017) ("[Plaintiff] identifies no evidence of behavior beyond typical infringement.").

---

[2] In a supplemental response, NST cited the deposition testimony of TI's corporate designee, Mr. Frank Cimino, regarding TI's practices with respect to patent monitoring. *See* Ex. 29 (NST's 2nd Suppl. Resp. to TI's  Interrogatory No. 7), 81–82. The Court has already considered that testimony and denied NST leave to plead that it evidenced willful blindness. *See* SUMF 4.

*Second*, NST alluded to unspecified "websites, technical presentations, and technical publications that [allegedly] describe Defendants' infringing products and conduct, including technical and marketing materials from Texas Instruments [allegedly] encouraging infringing uses of their products." Ex. 28, 37. NST did not, however, identify ***any actual materials***—let alone explain how they "encourag[e] infringing uses" of TI's products. NST was required "to identify specific evidence in the record and to articulate precisely how this evidence supports [its] claim." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("The court has no duty to search the record for material fact issues.").

Furthermore, NST cannot rely on TI's development of materials ***before the filing of NST's Complaint*** because the Court, in dismissing NST's pre-suit willful and indirect infringement claims, has already held that NST did not plausibly allege that TI had pre-suit knowledge of the asserted patents. SUMF 3. The only alleged conduct on which NST could have relied is ***post-suit*** conduct, but NST identifies none.  SUMF 8.

Apart from these threshold, dispositive issues, TI's noninfringement expert has noted in unrebutted testimony that none of TI's promotional or other materials relating to the accused products "advised third parties to practice the actual patented features at issue here," or "touted (or even described or referenced) any such alleged aspect of the Accused Products," or otherwise suggested "that TI even focused on those features." Ex. 3 (Colwell Reb. Rpt.), ¶ 417.

*Third*, NST referenced its then-forthcoming expert testimony on infringement. Ex. 28, 37. But its infringement expert's discussion of willful and indirect infringement, spanning two barebones paragraphs, is vague and conclusory. *See* Ex. 6 (Iglesia Op. Rpt.), ¶¶ 587–88. The expert opines without any evidentiary substantiation that "the allegations of . . . indirect[] and willful infringement" in NST's complaint "are correct." *Id.*, ¶ 587. He then posits, "[b]ased on [NST's]

14

allegations," that TI "induces" infringement by unspecified "end-customers" and "suppliers" by "actively market[ing], advertis[ing], offer[ing] for sale, and/or otherwise promot[ing] the TI Accused Products by publishing and distributing data sheets, manuals, and guides for the TI Accused Products." *Id.*, ¶¶ 587–88. He does not identify (i) *any* alleged "end-customers" or "suppliers," (ii) *any* data sheets, manuals, guides, or other technical materials, (iii) *any* evidence that any "end-customer" or "supplier" directly infringes any asserted patent, nor (iv) *any* communication between TI and any alleged direct infringer—let alone analyze any such hypothetical evidence and explain why and how a particular piece of evidence allegedly may support an inference that TI had a particular mental state. *See id.*

NST's expert's unsupported assertions are paradigmatic examples of conclusory expert testimony that is inadmissible[3] and does not "create issues of material fact at the summary judgment stage." *Crayton v. Amadeo Rossi, S.A.*, 384 F. App'x 330, 332 (5th Cir. 2010) (affirming summary judgment and disregarding expert affidavit that "merely sets out a variety of conclusory allegations . . . devoid of an underlying factual basis and explanation"); *see also Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:22-cv-00125-JRG, 2023 WL 8281905 at *4 (E.D. Tex. Nov. 29, 2023) (expert "may not opine that [defendant] induced infringement because [expert] never . . . recites any . . . fact to support a factual finding that [defendant] had the requisite mental state."); *Reitz v. Woods*, 85 F.4th 780, 788–89 (5th Cir. 2023) ("[E]xpert opinions setting forth ultimate or conclusory facts and conclusions of law are inadmissible") (citation omitted).

### B.    TI Is Entitled to Summary Judgment of No Infringement of Method Patents.

NST's claims based on its Method Patents fail as a matter of law as NST cannot prove that anybody (whether TI itself or any third party) performed any claimed steps within the United States

---

[3] TI is concurrently moving to strike these improper opinions of NST's expert.

and within the relevant time period. SUMF 15–18. *See ION, Inc. v. Sercel, Inc.*, 2010 WL 3768086, *5 (E.D. Tex. Sept. 16, 2010) (to infringe a method claim, the infringer must "perform all of the steps of the claimed method within the United States."), *aff'd sub nom.*, 464 F. App'x 901 (Fed. Cir. 2012); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1371 (Fed. Cir. 2022).

    1.  <u>NST Cannot Prove That TI Directly Infringed Any Method Patent.</u>

A method claim "is directly infringed only by one *practicing* the patented method," and not "by the sale of an apparatus even though it is capable of performing only the patented method." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774–75 (Fed. Cir. 1993) (emphasis added). NST must show "an actual act of infringement" of each asserted method claim **by TI** in the United States; merely showing that TI's accused products allegedly possess the "capability" to infringe is insufficient. *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 521 (Fed. Cir. 2012).

NST cannot make the requisite showing. It has identified no evidence that TI ever practiced any asserted method claim (*e.g.*, by testing or operating the accused products) in the United States—let alone that TI did so on or after Dec. 19, 2016 (*i.e.*, the period for which NST may recover). SUMF 16–18; 35 U.S.C. § 286 ("no recovery . . . for any infringement committed more than six years prior to the filing of the complaint."). Failing to appreciate that the legal requirements for infringing a method claim versus an apparatus claim *differ*, NST's expert opines in a single conclusory sentence that the identical set of facts proves infringement of *all* asserted claims. Ex. 6 (Iglesia Op. Rpt.), ¶ 586. And while this conclusory statement mentions TI's alleged "use" of the accused products (*id.*), the allegation is unsupported by evidence and cannot create a genuine dispute of fact. *See Reitz*, 85 F.4th at 788–89 (conclusory assertions not admissible).

To illustrate, Claim 10 of the '2,893 patent requires performance of a "method of designing an integrated circuit" (SUMF 11), including certain steps during "[t]he process in which the

16

Accused Products, system-on-chip integrated circuits, are designed." Ex. 6 (Iglesia Op. Rpt.), ¶¶ 568, 578. It is undisputed that all relevant designing activity occurred overseas. SUMF 13.

Absent proof that TI actually "performed each of the claimed steps in the asserted method claims," NST's claims that TI directly infringed the Method Patents fail as a matter of law. *Mirror Worlds, LLC v. Apple, Inc.*, 784 F.Supp.2d 703, 715 (E.D.Tex., 2011) (granting JMOL of no direct infringement of method claims; holding "direct infringement of a method claim cannot be determined on speculation, assumptions, or inferences."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010) (reversing denial of JMOL when patentee "identifie[d] no evidence that Defendants infringed the method claims by testing or operating any copies of the accused products in the United States.").

2.  NST Cannot Prove That TI Indirectly Infringed Any Method Patent.

Without a direct infringer, there can be no indirect infringement. *See, e.g.*, *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1049 (Fed. Cir. 2000). NST has not identified any third party that has practiced any asserted method claim in the United States after NST filed its Complaint (*i.e.*, the period to which NST's indirect infringement claims are limited). SUMF 15, 18. NST's infringement expert alleges indirect infringement through a vague and conclusory reference to unidentified "end-customers" and "suppliers," Ex. 6 (Iglesia Op. Rpt.), ¶¶ 587–88, but this "conclusory opinion, unsupported by any specific facts, is insufficient to maintain a claim of indirect [infringement]." *Interwoven, Inc. v. Vertical Computer Sys.*, No. CV 10-04645 RS, 2013 WL 3786633, at *6 (N.D. Cal. July 18, 2013); *see also Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1334 (Fed. Cir. 2003) (mere "theoretical possibility" of direct infringement "is insufficient to create a *genuine* issue of material fact.") (citation omitted).

17

Claim 10 of the '2,893 patent again illustrates TI's point. Infringement requires performance of a "method of designing an integrated circuit," but NST has identified *zero evidence* (i) that any third party designed any ICs; (ii) that TI induced any third party to design any ICs; or (iii) that any such designing occurred post-suit. SUMF 15. NST's failure of proof is predictable as TI is in the business of *selling ICs*; not encouraging customers to design such products. SUMF 10. The undisputed facts establish that the accused products were all designed prior to NST's lawsuit (SUMF 14), and all relevant designing activity occurred abroad. SUMF 13.

Because NST has no evidence that any third party practiced any claimed methods in the United States, TI is entitled to summary judgment. *See Celanese Int'l Corp. v. Oxyde Chemicals, Inc.*, 554 F. Supp. 2d 725, 728 (S.D. Tex. 2008) (summary judgment of no indirect infringement warranted where patentee "failed to present evidence of direct infringement by a third party.").

### C.    TI Is Entitled to Summary Judgment of No Pre-Suit Damages for the '818 Patent.

Under 35 U.S.C. § 287(a), "the patentee cannot collect damages until it either begins providing [actual or constructive] notice or sues the alleged infringer—the ultimate form of notice—and then only for the period after notification or suit has occurred." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*"); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365–69 (Fed. Cir. 2017) ("*Arctic Cat I*"). Here, as detailed below, NST failed to provide actual or constructive pre-suit notice of TI's alleged infringement of the '818 patent, and is accordingly barred from seeking pre-suit damages for such alleged infringement. TI is entitled to summary judgment of no pre-suit damages. *See, e.g.*, *Team Worldwide Corp. v. Academy, Ltd.*, No. 2:19-cv-00092-JRG-RSP, 2021 WL 1897620, at *1–5 (E.D. Tex. May 3, 2021); *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-cv-00662-JRG-RSP, 2019 WL 2959568, *1–2 (E.D. Tex. Apr. 18, 2019).

18

████████████████████████████████████████████████

### 1.    NST Did Not Provide Pre-Suit Actual Notice.

"Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Arctic Cat II*, 950 F.3d at 864 (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994)). NST admits that it intentionally opted *not* to communicate to TI a specific charge prior to filing a complaint to avoid "chance of a DJ." Ex. 22 (Hurwitz Tr.), 57:11–58:11; SUMF 39.

### 2.    NST Did Not Provide Pre-Suit Constructive Notice.

Constructive notice under § 287(a) requires that patented products be marked with the patent number. *Arctic Cat I*, 876 F.3d at 1366; *see also Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1383 (Fed. Cir. 2017). "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement," including by making "reasonable efforts" to ensure compliance by any licensees. *Arctic Cat I*, 876 F.3d at 1366. The Federal Circuit established the following framework for adjudicating compliance with § 287(a):

> [A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287. To be clear, this is a low bar. The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent. . . . Once the alleged infringer meets its burden of production, . . . ***the patentee bears the burden to prove the products identified do not practice the patented invention or are marked.***

*Arctic Cat I*, 876 F.3d at 1368 (emphasis added).

NST cannot establish constructive notice. TI put NST on notice that ████████████ ████████████████████████████████████████████████. SUMF 22–35. Specifically, TI identified the ████████████████████████ that NST now accuses of infringement. *Id*. These products were sold in the U.S. ████████████████████

19

█████████████████████████████████████████

███████ *Id.* Thus, TI satisfied its "low" "initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat I*, 876 F.3d at 1368.

NST cannot prove that the Samsung Galaxy S10 series phones "do not practice the patented invention or are marked." *Id.* at 1368. First, NST has expressly asserted that the Samsung Galaxy S10 series phones *do* practice the '818 patent. SUMF 25–27. Second, NST admits its unawareness regarding whether the phones were marked with the '818 patent number (SUMF 36); while advancing no contention that NST or its predecessor(s) took measures to require ████████ to effectuate such marking. SUMF 30, 37.

NST's sole challenge to TI's marking defense has been attorney argument that the ████████ ████████████████████████████████████████████. 32 (NST's 3rd Suppl. Resp. to TI's Interrogatory No. 5), 57. But this assertion is clearly incorrect as a matter of law. The

████████████████      ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████, and it is ***NST's avowed position*** that the '818 patent covers the Arteris interconnect technology and functionality as implemented in the Galaxy S10 phones. SUMF 22–27. Moreover, Samsung has confirmed that ████████████████████████

████████████████████████████████████████████████████████,

SUMF 28, and NST acknowledged in the Philips-NST Patent Purchase Agreement that NST's acquisition of the '818 patent was ████████████████████████████████████

████████████████████████ SUMF 29.

NST counsel's bare assertion that the ████████████████████████ does not create a genuine dispute of fact that could preclude summary judgment. *See Goodman v. Hewlett-Packard Co.*, 393 F.Supp.3d 580, 591 (S.D. Tex. Aug. 16, 2018) ("Attorney argument is

████████████████████████████████████████████

insufficient to preclude summary judgment.") (citing *Blue Spike, LLC v. Audible Magic Corp.*, No.

6:15-cv-584, 2016 WL 3653516, *4 (E.D. Tex. May 31, 2016)). The proper interpretation of the

████████████████████████ scope is an issue of law,[4] and ████████████████████

████████████████ . Summary judgment is therefore warranted.

### D. TI Is Entitled to Summary Judgment of No Infringement Because of TI's Implied License.

TI holds an implied license under the asserted patents through equitable estoppel.

"Three elements must be established for equitable estoppel to bar a patentee's suit: (1) the patentee,

through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the

patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer

relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is

allowed to proceed with its claim." *High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1330

(Fed. Cir. 2016). Here, undisputed facts establish all three elements.

*First*, since 2017, NST's predecessor-in-interest, Philips, has been purchasing and reselling

as part of its own products TI's now-accused SoCs. SUMF 40–41. Philips never alerted or even

suggested to TI that those SoCs allegedly infringe the asserted patents. SUMF 42. In the ***five-year***

***period*** between Philips' first purchase of TI's accused products and NST's present lawsuit, "TI

sold ████████ ***units*** of TI chips containing an accused Arteris NoC to Philips." Ex. 10 (Riley

Rpt.), ¶ 291 (emphasis added). As the owner of the patents until June 2022, SUMF 21, Philips had

a duty to speak up regarding any alleged infringement yet did not do so, leading TI "to believe that

---

[4] *See, e.g.*, *Beckman Inst., Inc. v. Cincom Sys., Inc.*, 232 F.3d 893, *4 (9th Cir. 2000) ("proper interpretation of the License Agreement" is a "legal issue"); *Armstrong Pump, Inc. v. Hartman*, No. 10-cv-446S, 2016 WL 7208753, *3 (W.D.N.Y. Dec. 13, 2016) (scope of license agreement is "a legal issue that does not require any expert opinion."); *Contour Design, Inc. v. Chance Mold Steel Co.*, 794 F. Supp. 2d 315, 325–26 (D.N.H. 2011) (contract interpretation is an issue of law).

21

███████████████████████████████████████

it could produce the [accused products] without interference . . . on the basis of patent infringement." *Hon Hai Precision Indus. Co. v. Asia Vital Components Co.*, No. CV 03-0093-SVW(MCX), 2004 WL 5806997, *16 (C.D. Cal. Feb. 12, 2004) (finding equitable estoppel where "[t]he notice of infringement came fourteen months after [accused infringer] received the first . . . order" from patentee); *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469, 1472 (Fed. Cir. 1998) (finding a "duty to speak" given parties' transactions). To make matters worse, Philips continued purchasing accused TI products ***even after*** █████████████████████████ ███████████████. SUMF 43–44. In other words, despite having formed a belief that TI was infringing its patents, Philips did not alert TI, but instead quietly continued to purchase even more accused products, increasing TI's potential liability. *Id.*

NST is bound by its predecessor's misleading silence. *See High Point Sarl v. Sprint Nextel Corp.*, 67 F. Supp. 3d 1294, 1305–06 (D. Kan. 2014), *aff'd in part*, 817 F.3d 1325 (Fed. Cir. 2016) ("To begin, as assignee of the Patents–in–Suit, High Point is both bound by the actions (and inaction) of its predecessors-in-interest and imputed with their knowledge."); *see also Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 933 (N.D. Cal. 2012) (courts "simply consider[] the patentee's and its predecessor's conduct together to determine" equitable estoppel).

*Second*, TI relied on Philips' conduct. "To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with [its conduct]." *Hon Hai* at *15. Here, TI and Philips have had a continuous supplier—buyer relationship since 2017. SUMF 40–41. As in *Hon Hai*, TI's manufacture and sale of ███████████████ of accused products to the patentee demonstrates reliance on a belief TI could make and sell those products without patent interference. *Id.*, *15–16; SUMF 41. Moreover, here, with Philips as an active customer of TI SoCs that use Arteris interconnects—and unaware

███████████████████████████████████████

of Philips' alleged patent rights directed to such interconnects—TI *launched at least three new SoC products* that use those interconnects and are now accused. SUMF 46–47. TI's reliance is therefore more clear-cut than the accused infringer's in *Hon Hai*. *Hon Hai*, \*15–16.

*Third*, TI will be materially prejudiced if NST is allowed to proceed with its claims. NST's lawsuit seeks to burden with royalties TI's sales to Philips (SUMF 48), yet TI had no reason to believe that a longtime buyer of its products would suddenly turn around and characterize as tortious the very transactions in which it participated. *See Hon Hai*, \*15–16. Excluding these sales from NST's royalty base would not cure TI's prejudice, which arises from Philips' *prolonged failure* to notify TI that it regards TI's implementation of certain third-party technology as unlawful. The Court should instead find equitable estoppel because, had Philips timely alerted TI of its infringement claims, TI could have promptly taken steps to mitigate or even eliminate its risk of liability. Indeed, TI has discontinued developing products using Arteris interconnect technology in favor of non-infringing alternatives. SUMF 45. If it weren't for Philips' years-long purchasing of TI's products coupled with misleading silence regarding any IP concerns, TI could have prioritized development and adoption of these alternative technologies earlier.

### E.    TI Is Entitled to Summary Judgment of No Infringement by Authorized Sales

Included in NST's royalty base are over ███████ accused products that Philips bought from TI. SUMF 41, 48. These sales are non-infringing as a matter of law because, throughout the relevant timeframe, Philips either owned the asserted patents or █████████████ the patents. *See* SUMF 21, 49 (Philips assigned patents to NST in June 2022, but ██████████████████ ███████████████████████████████████████████████). At no point could Philips directly infringe, and consequently no indirect liability could arise for TI from selling to Philips. *See Arthur A. Collins, Inc.*, 216 F.3d at 1049 (no indirect infringement absent direct infringement); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031–32 ("The

23

████████████████████████████████

proprietary rights granted by any patent are the rights to exclude *others* from making, using or selling the invention[.]") (Fed. Cir. 1995) (emphasis added). Likewise, TI cannot directly infringe as TI's making and selling of accused products *to the patentee* were impliedly authorized through equitable estoppel (*supra* § III.D) and then, after Philips sold the patents to NST ███████ ████████, through Philips' ███████████████████. *See Carnegie Mellon Univ. v. LSI Corp.*, No. 18-CV-04571-JD, 2020 WL 5592990, *3 (N.D. Cal. Sept. 18, 2020) ("The Federal Circuit has determined that have made rights function as an implied license to a supplier of products to a licensee customer.") (citing *LaserDynamics, Inc., v. Quanta Computer, Inc.*, 694 F.3d 51, 73 (Fed. Cir. 2012)). TI is entitled to summary judgment of no infringement in relation to its sales to Philips. *See id.*, *5 ("LSI is entitled to judgment on this issue as a matter of law.").

Separately, Hitachi bought ███████ accused products from TI outside the United States. SUMF 48. While NST seeks compensation for these extraterritorial sales (*id.*), such sales cannot support any direct infringement claims against TI. *See, e.g., Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1377 (Fed. Cir. 2016) ("The reach of section 271(a) is limited to infringing activities that occur within the United States.") (cleaned up). Similarly, no indirect liability can arise for TI in relation to these sales as Hitachi was ████████████████████████████████. SUMF 50–51. Indeed, even if NST had proof that Hitachi imported some of its ███████ units into the United States (NST has no such proof), Hitachi was ████████████████████ *Id.* Therefore, TI is entitled to summary judgment of no infringement in relation to its aforesaid sales to Hitachi. *See, e.g.*, *FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 219CV00023RWSRSP, 2020 WL 948022, *2 (E.D. Tex. Feb. 27, 2020), *aff'd*, 855 F. App'x 735 (Fed. Cir. 2021) (summary judgment proper when license covers alleged infringing activities).

**F.      TI Is Entitled to Summary Judgment of No Injunctive Relief.**

To establish entitlement to injunctive relief, a plaintiff must show that it has suffered an "irreparable injury" for which monetary damages are "inadequate" compensation. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Bright Data Ltd. v. Teso LT, UAB,* 584 F. Supp. 3d 193 (E.D. Tex. 2022). As a non-practicing entity whose entire business model is collecting money through patent licensing, SUMF 53–54, NST has not suffered irreparable harm from TI's alleged infringement and can be made whole by monetary damages.[5] *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1339 (Fed. Cir. 2012) (district court "clearly erred" in finding irreparable harm when "[patentee] sought to broadly and extensively license [asserted] technology"). Thus, NST's corporate representative testified that NST would not seek an injunction were it to receive royalties compensating it for TI's alleged infringement, SUMF 55, and NST's damages expert confirmed that NST can be adequately compensated with such royalties, SUMF 56. *See Bright Data*, 584 F. Supp. 3d at 198 ("In light of [plaintiff's] assertions through its retained expert that a running royalty and monetary relief could fairly and fully compensate it for future infringement, the Court finds that [plaintiff] has not met its burden to establish . . . that its harm is irreparable."). Thus, TI is entitled to summary judgment.

**IV.     CONCLUSION**

For the foregoing reasons, TI respectfully requests that the Court grant summary judgment of: (1) no willful or indirect infringement; (2) no infringement of the Method Patents; (3) no pre-suit damages for the '818 patent; (4) no infringement due to an implied license; (5) no infringement in relation to TI's sales to Philips and Hitachi; and (6) no injunction.

---

[5] NST identified no evidence in response to TI's request for identification of all "evidence justifying how [NST] would be irreparably harmed" and "how remedies available at law" would be inadequate. Ex. 31 (NST's Resp. to TI's Interrogatory No. 8), 84–85.

25

███████████████████████████

Dated: April 29, 2024                          /s/ *Ranganath Sudarshan*                    .

Robert T. Haslam (lead counsel)
rhaslam@cov.com
Anupam Sharma
asharma@cov.com
Hyun S. Byun
hbyun@cov.com,
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Ranganath Sudarshan
rsudarshan@cov.com
Tarek Austin
taustin@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5346
Facsimile: (202) 778-5346

Udit Sood
usood@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Ste 5400
San Francisco, CA 94111
Telephone: 415-591-6000
Facsimile: 415-591-6091

Amanda Abraham
aa@rothfirm.com
The Roth Law Firm
115 N. Wellington, Suite 200
P O Box 876
Marshall, TX 75671-0876
Telephone: 903-935-1665
Facsimile: 903-935-1797

Wesley Hill

26

wh@wsfirm.com
Ward, Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: 903-757-6400
Facsimile: 903-757-2323

*Attorneys for Defendant*
*Texas Instruments Incorporated*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail and notice via the Court's CM/ECF system per Local Rule CV-5(a)(3) this April 29, 2024.

/s/ Ranganath Sudarshan
Ranganath Sudarshan