**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TEXAS INSTRUMENTS INCORPORATED,<br><br>Defendant. | Civil Action No. 2:22-cv-482-RWS<br><br>JURY TRIAL DEMANDED |

**DEFENDANT TEXAS INSTRUMENTS INCORPORATED'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
<u>TI'S FIFTH AFFIRMATIVE DEFENSE</u>**

████████████████████████

**TABLE OF CONTENTS**

I.      Response to Statement of Issue to Be Decided.................................................... 1

II.     Response to Plaintiff's Statement of "Undisputed" Facts .................................... 1

III.    Legal Standards.................................................................................................... 3

IV.     Argument ............................................................................................................. 3

        A.      NST's License-Based Arguments Should Be Rejected. ........................ 3

                1.      NST Does Not Sufficiently Cite The Relevant Record. ............................. 4

                2.      The Record Evidence Precludes NST's Requested Summary
                        Judgment. ................................................................................ 5

                3.      NST's Arguments Lack Merit And Challenge Theories TI Did Not
                        Urge.......................................................................................... 9

        B.      NST's Exhaustion Arguments Are Meritless. ....................................... 10

        C.      NST's "Field of Use" Arguments Should Be Rejected. ........................ 11

V.      Conclusion ......................................................................................................... 11

████████████████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMP Inc. v. United States*,
  389 F.2d 448 (Ct. Cl. 1968) ....................................................................................................6

*Asetek Holdings, Inc. v. CoolIT Sys., Inc.*,
  No. C-12-4498 EMC, 2013 WL 5640905 (N.D. Cal. Oct. 11, 2013).......................................8

*Asetek Holdings, Inc. v. Coolit Sys., Inc.*,
  No. C-12-4498 EMC, 2014 WL 2735046 (N.D. Cal. June 16, 2014) ......................................8

*Atlas Corp. v. United States*,
  895 F.2d 745 (Fed. Cir. 1990)...............................................................................................10

*Bishop v. United States*,
  No. 2:18-CV-163-Z-BR, 2021 WL 356841 (N.D. Tex. Jan. 13, 2021)....................................4

*Carnegie Mellon Univ. v. LSI Corp.*,
  No. 18-CV-04571-JD, 2020 WL 5592990 (N.D. Cal. Sept. 18, 2020) .....................................8

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
  890 F. Supp. 2d 602 (W.D. Pa. 2012).......................................................................................7

*CoreBrace LLC v. Star Seismic LLC*,
  566 F.3d 1069 (Fed. Cir. 2009).................................................................................................7

*Duffie v. United States*,
  600 F.3d 362 (5th Cir. 2010) ....................................................................................................5

*Hon Hai Precision Indus. Co. v. Asia Vital Components Co.*,
  No. CV 03-0093-SVW(MCX), 2004 WL 5806997 (C.D. Cal. Feb. 12, 2004).........................6

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
  No. 2:16-cv-55-JRG-RSP, 2017 WL 5165606 (E.D. Tex. Oct. 15, 2017) ...............................3

*Intel Corp. v. Broadcom Corp.*,
  173 F. Supp. 2d 201 (D. Del. 2001)..........................................................................................7

*Medeiros v. Quality Logistics, Inc.*,
  No. 618-cv-526-JDK-JDL, 2019 WL 5588888 (E.D. Tex. Oct. 11, 2019) ..............................5

*Skotak v. Tenneco Resins, Inc.*,
  953 F.2d 909 (5th Cir. 1992) ....................................................................................................5

██████████████████████████████

*Thomas v. Abbott*,
    No. 4:08-CV-208, 2009 WL 900740 (E.D. Tex. Mar. 30, 2009) ...............................................4

*Thorn EMI North America, Inc. v. Hyundai Elec. Indus. Co.*,
    CA 94–332–RRM, 1996 WL 33415780 (D. Del. July 12, 1996) ............................................7

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
    No. 18-cv-5075, 2020 WL 3472597 (S.D.N.Y June 25, 2020) ................................................7

*Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*,
    103 F.3d 1571 (Fed. Cir. 1997)...............................................................................................6

**Statutes**

35 U.S.C. 287(a) ...............................................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 56(a) .........................................................................................................................3

Fed. R. Civ. P. 56(b)(3).....................................................................................................................5

Local Rule CV-56 ..............................................................................................................................4

If any fact issues remain after TI's summary judgment motions are decided, TI intends to invoke its Fifth Affirmative Defense ("Defense") to show that NST's claims are precluded, in whole or in part, by certain express and implied licenses. TI relies, among other things, on license agreements to the asserted patents that NST or its predecessor-in-interest, Philips, granted certain TI customers. NST's motion for partial summary judgment on this Defense (Dkt. 220 ("Mot.")) presents no reason why TI's Defense should be precluded. As shown below, the Motion is procedurally defective in significant part, and presents arguments that are substantively erroneous or moot. The Motion also attacks a host of straw man arguments that TI has not made, and that TI does not depend on for the Defense. The Motion should be denied.[1]

## I.  RESPONSE TO STATEMENT OF ISSUE TO BE DECIDED

1.  TI agrees with NST's statement of the issue to be decided.

## II.  RESPONSE TO PLAINTIFF'S STATEMENT OF "UNDISPUTED" FACTS

1.  Paragraph 1 is undisputed.

2.  Paragraph 2 is disputed as it misleadingly implies that NST's Interrogatory No. 10 is focused on licensed TI customers. In fact, the request is focused on "acceptable design-arounds or non-infringing alternatives," including "identification and description of each" design-around/alternative, dates when alternatives/design-arounds "first became available," "bases for [TI's] contention that" each such alternative/design-around "is non-infringing," "all evidence regarding technical feasibility, availability, and acceptability in the marketplace of any such" alternative / design-around, "the costs and timeline (actual and/or anticipated) to develop and commercially implement" alternatives/design-arounds, any "and all attempts by [TI] or others to design around." Mot. Ex. 1 at 64. As TI noted in its objections, NST's Interrogatory No. 10 is

---

[1] As NST's Motion omitted page numbers, TI's citations here are to sections of the Motion.

██████████████████████████████████████████

extraordinarily compound. *Id.*, at 65. Besides inquiring about numerous discrete aspects of non-infringing alternatives / design-arounds, NST's request includes discrete sub-parts relating to topics like "damages," "enhanced damages," and "opinion of counsel." *Id.*, at 64.

3.      Paragraph 3 is disputed to the extent it implies that Ms. Riley offered legal conclusions regarding whether particular TI sales to particular customers were authorized. TI also disputes NST's footnote no. 1 regarding the ████ license; however, TI made no sales in the United States to ████ and thus there is no need for TI to invoke the Defense in relation to ████. While TI sold ████████ units of accused products *outside* the United States, those transactions are irrelevant to this case as NST has no theory that could justify recovery based on those sales. *See, e.g.*, Dkt. 235 (NST's opposition to TI's motion for summary judgment on certain liability and remedy issues), 2 (withdrawing its § 271(f)(2) infringement theory for counting foreign sales).

4.      Paragraph 4 is undisputed.

5.      Paragraph 5 is undisputed for being irrelevant—TI sold zero units of accused products in the United States to each of ████████████████. TI does not concede NST's legal conclusions in this paragraph, but the existence and interpretation of license limitations or restrictions are irrelevant when domestic sales to the licensed companies are non-existent.

6.      Paragraph 6 is missing in NST's Motion.

7.      Paragraph 7 is undisputed.

8.      Paragraph 8 is undisputed.

9.      Paragraph 9 is disputed. TI is a signatory to Exhibit 10 (*i.e.*, the Arteris-TI License), contrary to NST's string citation. It is undisputed that TI is not a signatory to Exhibits 4–9 or 11.

10.     Paragraph 10 is disputed to the extent it creates an impression that TI's Defense is based on TI's *purchase* of components or accused products from particular entities. It is

2

undisputed, however, that none of the identified TI customers *sells to TI* components of the accused products or the accused products themselves.

11.     Paragraph 11 is undisputed to the extent that TI and Arteris entered into a license agreement with an effective date of October 15, 2007. TI does not accept NST's summaries regarding why TI executed the agreement or the terms of the license, but those appear irrelevant to this Motion as this SUMF is not cited in NST's arguments.

12.     Paragraph 12 is disputed. NST's legal conclusion that the Arteris-TI License "is not a patent license" is incorrect. The Arteris-TI License is a patent license. As TI demonstrated elsewhere (Dkt. 210, § II.C), the agreement explicitly licensed TI under Arteris' patents directed to Arteris' NoC interconnect technology. This is the same technology that is accused of infringement in this case.

## III.    LEGAL STANDARDS

A party seeking summary judgment must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The court must consider evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-cv-55-JRG-RSP, 2017 WL 5165606, at *2 (E.D. Tex. Oct. 15, 2017) (citation omitted).

## IV.    ARGUMENT

### A.    NST's License-Based Arguments Should Be Rejected.

TI's Defense precludes, in whole or in part, NST's infringement claims. For instance the undisputed record shows that TI enjoys an implied license through equitable estoppel based on Philips' continuous purchasing of accused TI products without ever suggesting to TI that TI was engaging in unlawful transactions. *See* Dkt. 213 (TI's MSJ on Certain Liability and Remedy Issues)*,* § III.D. In addition, the unrebutted record shows that license rights of some customers

████████████████████████████████████████████

(*e.g.*, ██████ ) expressly and/or impliedly authorize those customers to import into the United States (or use domestically) TI's accused chips. *Id.*, § III.E.

Section V.A of NST's Motion, based on arguments about express and implied licenses, does not justify summary judgment for three independent reasons: (1) NST did not cite record evidence and presented only conclusory legal arguments; (2) the record evidence that NST ignored precludes summary judgment; and (3) NST's arguments lack merit and challenge theories TI did not urge.

1.    NST Does Not Sufficiently Cite The Relevant Record.

While Section V.A of NST's Motion argues that TI does not enjoy any rights under various licenses, it does not actually cite any TI customer's license other than the Philips-NST Patent Purchase Agreement ("PPA") (Mot. Ex. 11). Instead, NST posits a sweeping conclusion that TI enjoys rights under none of the ███████████████████████████████████ agreements, but without citing to (let alone analyzing) *any of those actual agreements* (which NST attached as Exhibits 3–9).[2] *See* Mot., § V.A (citing only Exhibits 2 and 11); *cf.* Local Rule CV-56 ("If the movant relies upon evidence to support its motion, the motion should include appropriate citations to proper summary judgment evidence as set forth below. . . 'Appropriate citations' means that any excerpted evidentiary materials that are attached to the motion . . . should be referred[.]").

By glossing over the evidentiary record, NST fails its burden of "identifying [the] portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Thomas v. Abbott*, No. 4:08-CV-208, 2009 WL 900740, at *1–2 (E.D. Tex. Mar. 30, 2009) (citation

---

[2] NST's arguments depend on the content of, and an actual analysis of, the customer license agreements. *See* Mot. V.A ("None of the relevant licenses mention TI, let alone expressly identify TI as an intended beneficiary of the license."); *id.* ("[TI] is not an intended third-party beneficiary [of the customer license agreements].").

████████████████████████████████████████

omitted); *Bishop v. United States*, No. 2:18-CV-163-Z-BR, 2021 WL 356841, at \*2 (N.D. Tex. Jan. 13, 2021) ("Rule 56 'does not impose on the district court a duty to sift through the record in search of evidence to support' a party's motion for, or opposition to, summary judgment.") (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16, n.7 (5th Cir. 1992)); *see also* Fed. R. Civ. P. 56(b)(3) ("The court need consider *only the cited materials*, but it may consider other materials in the record.") (emphasis added). Thus, as to ██████████████████████████████ ████████, NST's arguments in § V.A should be rejected as unsupported under Rule 56.[3]

2.      The Record Evidence Precludes NST's Requested Summary Judgment.

The specifics NST omitted show that, as to some sales, *TI* is entitled to summary judgment of no infringement, and as to others, NST's motion is moot.

████████. TI is entitled to summary judgment of no infringement in relation to TI's sales to ████████ *See* Dkt. 213, § III.E. Virtually all of these sales occurred outside the U.S. *See id.*, SUMF ¶ 48 ███████████████████ units, or ██████ %, were sold abroad). NST cannot show that TI's *non-U.S.* sales could lead to liability for TI because NST has:

i.      no legal theory under which those foreign sales could directly infringe U.S. patents, particularly in light of NST's withdrawal of its § 271(f)(2) theory (*see* Dkt. 213, § III (TI's motion for summary judgment); Dkt. 236 (NST's opposition to motion to strike damages opinions), 2 (withdrawing § 271(f)(2) theory));

ii.     no evidence that ████████ imported any of those accused chips into the U.S. post-suit (the period to which NST's indirect claims are limited, *see* Dkt. 95); and

---

[3] *See also Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) ("If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.") (citation omitted); *Medeiros v. Quality Logistics, Inc.*, No. 618-cv-526-JDK-JDL, 2019 WL 5588888, at \*3 (E.D. Tex. Oct. 11, 2019) (rejecting conclusory legal arguments presented without citations to the record).

5

███████████████████████████████████

iii.  no persuasive response to TI's argument that, even if ██████ *did* import any accused chips (and resell them in the U.S. as part of ██████ products), no liability could arise for TI as ██████ received explicit authorization ███████████████████████████████. *See* Dkt. 213, § III.E.[4] NST, in response to TI's motion for summary judgment on this issue (*id*.), did not articulate any legal theory to show liability arising from TI's non-U.S. sales to ██████ (Dkt. 250, 16–17), but instead rebutted an "upstream exhaustion" argument that TI did not make (as TI will show in its forthcoming reply brief).

Philips. TI is entitled to summary judgment of no infringement. *See* Dkt. 213, §§ III.D–E. *First*, until June 2022, Philips owned the patents, Mot., SUMF ¶ 7, and NST has no theory for how sales authorized by the patentee could be deemed unauthorized. *See* Dkt. 213, § III.D. When Philips contracted for TI's supply of accused chips, it impliedly authorized TI under Philips' patents because enforcement of Philips' patents under such circumstances would frustrate the contract's purpose. *AMP Inc. v. United States*, 389 F.2d 448, 455 (Ct. Cl. 1968) (implied license prevents derogation of negotiated contractual rights). Alternatively, Philips' continuous purchasing of accused TI products, without ever suggesting that TI is engaging in unlawful activity, misled TI into believing that Philips will not enforce its patents rights relating to those products. *Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997) (misleading conduct may give rise to equitable estoppel); *Hon Hai Precision Indus. Co. v. Asia Vital Components Co.*, No. CV 03-0093-SVW(MCX), 2004 WL 5806997, *16 (C.D. Cal. Feb. 12, 2004) (finding equitable estoppel under analogous circumstances). Because Philips could not, as

---

[4] TI has plausible license defenses in relation to the ██% of its sales to ██████ that occurred in the U.S. However, in the interest of narrowing the issues, TI will not assert its Fifth Affirmative Defense in relation to those few domestic sales.

██████████████████████████████████████████████

owner of the patents, recover from TI a royalty for *its own purchases* of accused TI products, Philips could not assign any right to such recovery to NST under the PPA.

*Second*, TI's post-PPA sales to Philips remain authorized. In June 2022, Philips sold NST the patents, Mot., SUMF ¶ 7, while "███████████████████████████ ██████████████████████████ (Mot. Ex. 11 at 7). "A grant of a right to 'make, use, and sell' a product . . . inherently includes a right to have a third party make the product," *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1074 (Fed. Cir. 2009), and equally, a grant of a right to *import* a product inherently includes a right to have a third party import the product. The accused TI products were all manufactured abroad. Dkt. 213, SUMF ¶ 12; Dkt. 250, 2 (SUMF ¶ 12 is undisputed). To the extent any were imported into the U.S. *upon Philips' request* and for its benefit, that is an ordinary exercise by Philips of ██████████████████████████. *CoreBrace LLC*, at 1074. Per NST's cited law, TI has a valid defense as "the activity alleged to constitute infringement has occurred within the scope of a license from the patent owner." Mot., § IV.B (citing *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-cv-5075, 2020 WL 3472597, at *12 (S.D.N.Y June 25, 2020) (citations omitted)).

*Third*, ██████████████████████████████████ TI's post-PPA sales to Philips. *See* Dkt. 213, § III.E. NST is wrong that "have made" rights do not cover off-the-shelf products. Mot., § V.A. NST cites (i) *Hyundai*, an opinion of the District of Delaware that is almost three decades old; (ii) *Intel*, a 2001 opinion where the same court applied *Hyundai*; and (iii) *Marvell*, a 2012 Western District of Pennsylvania opinion applying *Intel*.[5] NST omits that

---

[5] *See* Mot., § V.A (citing *Thorn EMI North America, Inc. v. Hyundai Elec. Indus. Co.*, CA 94–332–RRM, 1996 WL 33415780 (D. Del. July 12, 1996); *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 233 (D. Del. 2001); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 890 F. Supp. 2d 602, 609 (W.D. Pa. 2012)).

subsequent courts have disagreed with this line of cases and for good reason. For example, in *Asetek*, the Northern District of California observed that this narrow interpretation of the licensed rights "begs the question of how customized a product must be before it can be deemed custom made." *Asetek Holdings, Inc. v. Coolit Sys., Inc.*, No. C-12-4498 EMC, 2014 WL 2735046, at *4 (N.D. Cal. June 16, 2014). The *Asetek* court, in a prior order, elaborated as follows:

> [I]t is difficult to discern a policy basis to distinguish under the implied license theory a customized product from a standardized product purchased by the licensee. In either case, the licensee chooses to outsource the production in order to practice the patent rather than manufacture the product itself. And even if the product is off-the-shelf, the immunity extends only to sales of the product to the licensee, not to sales by the manufacturer or by any other unlicensed party. It is therefore difficult to discern how the licensor's expectations and rights are impaired as a result of the licensee buying off-the-shelf versus customized products; the licensor's rights as to sales of infringing off-the-shelf products to unlicensed users is still protected.

*Asetek Holdings, Inc. v. CoolIT Sys., Inc.*, No. C-12-4498 EMC, 2013 WL 5640905, at *2 (N.D. Cal. Oct. 11, 2013) (emphasis added); *see also Carnegie Mellon Univ. v. LSI Corp.*, No. 18-CV-04571-JD, 2020 WL 5592990, at *5 (N.D. Cal. Sept. 18, 2020) ("nothing in governing circuit precedent requires customization."). Accordingly, TI's sales authorized by neither (i) Philips' implied license to TI, nor (ii) NST's ███████████████████████████,
are nonetheless authorized under Philips' ████████████ rights.

███████████████████████. NST's Motion as to these entities is moot as TI sold zero units of accused products in the U.S. to each of these entities. Ex. A Riley Rpt., at Ex. 3.1. Moreover, while TI made some non-U.S. sales,[6] NST withdrew its § 271(f)(2) theory (*see* Dkt. 236, 2) and has articulated no basis to recover for those sales. *See* Dkt. 247 (TI's reply in support

---

[6] ████████████████ Ex. A Riley Rpt., at Ex. 3.2.

██████████████████████████████████████████

of its motion to strike plaintiff's damages testimony), § A. As there are no properly accused transactions, TI's Defense is irrelevant as to these customers.

███████████████. NST's Motion as to these entities is moot. Although these customers bought some accused TI products in the U.S. (████████████████████████████████████ ████), the sales all occurred prior to NST's lawsuit. Ex. A Riley Rpt., at Ex. 3.1. Under NST's method claims (four of the five asserted patents), TI could have no indirect liability based on █████████████████ domestic use or resale of these units (*see* Dkt. 95 (dismissing NST's pre-suit indirect infringement claims)), nor could there be any direct liability for TI as mere sales do not infringe method patents (Dkt. 213, § III.B). And for NST's sole patent with asserted apparatus claims (the '818 patent), 35 U.S.C. 287(a) bars pre-suit recovery. *Id*., § III.C.[7]

### 3.    NST's Arguments Lack Merit And Challenge Theories TI Did Not Urge.

*First*, NST's argument that "TI is not a signatory" (Mot., § V.A) attacks a straw man because TI's Defense does not depend on TI being a party to any of its customers' license agreements. As demonstrated above, TI properly invokes its *customers'* license rights when they explicitly or impliedly authorize activity that NST now accuses.

*Second*, NST's argument that "an express license cannot act as evidence of an implied license," (Mot., § V.A) to the extent intelligible, misses the mark. TI is relying on Philips' *behavior* (misleading silence), to which NST as Philips' successor is bound, for its implied license defense. Dkt. 213, § III.D. TI is not relying on an express patent license *between TI and Philips*. NST's cited case has nothing to do with the facts here. In *Atlas Corp. v. United States*, 895 F.2d 745, 754 (Fed. Cir. 1990), plaintiffs could not claim an implied contract with the Government because they

---

[7] If the Court does not accept these damage-limiting defenses, to narrow the issues, TI will not assert its Fifth Affirmative Defense as to TI's ~███ units sold to █████, and ~███████ units sold to ██████.

already had an express contract with the Government dealing with the same subject. *Id.* Here, TI is claiming an implied license with Philips but has no express patent license with Philips—only a sales contract.

*Third*, NST's argument that the Arteris-TI License conveyed no license to TI under the asserted patents again attacks a theory TI did not urge. Mot., § V.A. NST and its damages expert, Mr. Walter Bratic, inexplicably assume TI to be advancing such a theory. *See, e.g.*, Dkt. 219 (NST's motion to strike Riley's opinions), 11. TI relies on the license rights of its *customers* who generally purchase the accused products overseas and, with authorization from Philips, import, resell, or use those products in the U.S. As NST is aware, Arteris is not a TI customer. *See, e.g.*, Mot., § V.B (noting that: "Arteris is not an entity Ms. Riley lists as a customer to whom TI's sales should be excluded[.]").

### B.     NST's Exhaustion Arguments Are Meritless.

TI pleaded its Defense as applying to NST's infringement claims "in whole or in part" (Mot., SUMF ¶ 1) and indeed, while some of TI's theories defeat all claims (*e.g.*, equitable estoppel), others serve as a defense to only some accused activity (*e.g.*, sales to ▮▮▮▮). The facts and evidence discussed in the sections above demonstrate that NST is not entitled to summary judgment on the Defense.

Section V.B of NST's Motion cannot change this result as it merely attacks straw men. TI's defense theories, as discussed, do not depend on TI being a "downstream customer[]" of any licensed customer, as NST presumes. Mot., § V.B. NST is similarly wrong that TI, on the present record, has advanced an exhaustion defense invoking the Arteris-TI License. *Id.*[8]

---

[8] Both NST and its damages expert are wrong that the Arteris-TI License "is <u>not</u> a patent license." Mot., § V.B. (emphasis in original); *see, e.g.*, Dkt 243, § I.B.1 (the agreement is a patent license).

███████████████████████████████████

**C.     NST's "Field of Use" Arguments Should Be Rejected.**

Section V.C of NST's Motion focuses on TI's sales to ████████████████████.

However, as discussed above, TI sold zero units of accused products in the United States to each

of those entities. Ex. A Riley Rpt., at Ex. 3.1. As there are no accused transactions, TI's Defense

is irrelevant as to those customers. Thus, while TI does not concede the correctness of NST's "field

of use" arguments, the Court need not reach these issues because NST's arguments as to ██████

████████ are moot.[9]

**V.     CONCLUSION**

For the foregoing reasons, the Court should deny NST's motion in its entirety.


Dated: May 22, 2024                                        */s/ Ranganath Sudarshan*

Robert T. Haslam (lead counsel)
rhaslam@cov.com
Anupam Sharma
asharma@cov.com
Hyun S. Byun
hbyun@cov.com,
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Ranganath Sudarshan
rsudarshan@cov.com
Tarek Austin
taustin@cov.com
COVINGTON & BURLING LLP
One City Center

---

[9] While TI made some non-U.S. sales to ████████████████████ (*supra* n.6), NST has no basis to recover in relation to those sales. As to direct infringement, NST withdrew Bratic's untenable and untimely § 271(f)(2) theory (Dkt. 235, 2), and has stated no alternative theory. As to indirect infringement, NST has no evidence regarding how many units (if any) third parties imported into the U.S. post-suit (*i.e.*, the period to which NST's indirect infringement claims are limited; *see* Dkt. 95), and thus, has no basis for recovery.

850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5346
Facsimile: (202) 778-5346

Udit Sood
usood@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Ste 5400
San Francisco, CA 94111
Telephone: 415-591-6000
Facsimile: 415-591-6091

Amanda Abraham
aa@rothfirm.com
The Roth Law Firm
115 N. Wellington, Suite 200
P O Box 876
Marshall, TX 75671-0876
Telephone: 903-935-1665
Facsimile: 903-935-1797

Wesley Hill
wh@wsfirm.com
Andrea Fair
andrea@whfirm.com
Ward, Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: 903-757-6400
Facsimile: 903-757-2323

*Attorneys for Defendant*
*Texas Instruments Incorporated*

12

██████████████████████████████████

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail and notice via the Court's CM/ECF system per Local Rule CV-5(a)(3) this May 22, 2024.

/s/ Ranganath Sudarshan
Ranganath Sudarshan